**STATE of Missouri, Plaintiff–Respondent,**

v.

**James L. CARPENTER, Defendant–Appellant.**

No. 25197.

Missouri Court of Appeals,
Southern District,
Division One.

July 22, 2003.

Ellen H. Flottman, Columbia, for Appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., and Adriane Dixon Crouse, Asst. Atty. Gen., Jefferson City, for respondent.

PHILLIP R. GARRISON, Judge.

James L. Carpenter ("Appellant") was convicted, following jury trial, of one count of the class B felony of burglary in the first degree, a violation of Section 569.160,[1] and one count of armed criminal action ("ACA"), a violation of Section 571.015. The trial court entered judgment pursuant to the jury's verdicts and sentenced Appellant to consecutive terms of seven years imprisonment for burglary and thirteen years imprisonment for ACA. We affirm in part and reverse in part.[2]

Judith Ann Seymour ("Seymour") lived with Appellant in a romantic relationship from 1993 until 1996, at which time Seymour asked Appellant to leave because she believed he had begun dating another woman. Their subsequent relationship was generally amicable,[3] but was not romantic.

On the morning of July 21, 1998, Appellant went to Seymour's house in Joplin, Missouri to ask her if she would take him to get a flat tire on his truck repaired. Seymour told Appellant she did not have time to do so, but agreed to drop him off at his residence and told him she would return after work to see if he still needed help with the flat tire. When Seymour got off work at approximately 12:30 P.M., she drove by Appellant's residence and, seeing that Appellant's truck was gone, assumed he had gotten the tire fixed. Upon arriving at her home, Seymour telephoned Appellant and left a message that she had been by his home as she had promised.

Later that afternoon, Seymour was in her bathroom getting ready to go shopping with her granddaughter, Bonita Montez ("Montez"), when Appellant entered her house. When Seymour told him she was in a hurry, he assured her he was not going to stay. Appellant seemed "strange" and "nervous," telling Seymour he was "hearing voices" and "didn't know what he was going to do[.]"

Montez arrived at approximately that time for her shopping date with Seymour, but Appellant did not want to talk in front of her. Appellant and Seymour went out to the porch to talk. Montez, having noted that Appellant's behavior was "nervous" and "weird," followed them and told Appellant that if he did not leave she was going to call the police. Appellant did leave, but was "very agitated" and "angry" and yelled at both Seymour and Montez in a threatening manner as he drove away.

Later that evening, after Seymour had gone to bed at approximately 10:00 P.M., a

---

1. References to statutes are to RSMo (2000) unless otherwise indicated.

2. A prior trial arising from the same facts resulted in Appellant's conviction of first-degree burglary and ACA and acquittal of forcible sodomy. We reversed those convictions due to instructional error. *State v. Carpenter,* 57 S.W.3d 405, 410 (Mo.App. S.D.2001).

3. There was, however, evidence of erratic behavior on the part of Appellant, including at least one occasion when he threatened Seymour, and another occasion when he attempted suicide in Seymour's presence by swallowing a bottle of her prescription medication.

noise woke her. She got up and saw a flash "resembl[ing] a roman candle" go through the kitchen and heard glass breaking. Appellant had broken in the back door of her house by breaking out the glass and kicking the door open, and had shot the front of her oven with a .22 caliber rifle. Appellant then got on top of Seymour and placed the rifle at her throat. He made Seymour remove her pajama top, telling her repeatedly that "he was in control." When Seymour grabbed her portable phone, Appellant took it away and threw it into the bathroom.[4] He then fired the rifle over Seymour's shoulder, destroying a mirror.

Seymour escaped momentarily and ran to another room, but Appellant caught her, pulled her pajamas bottoms off, grabbed her by her hair, and pulled her into the kitchen. There, he poured several cans of beer on her, continuing to say he was "in control." At some point, Seymour was able to pick up a hammer to defend herself, but Appellant grabbed it and threw it into another room.

Seymour told Appellant she needed to use the bathroom, and he told her to go outside and urinate in the back yard. Seymour tried to escape by running out the back door, but was struck in the back of the neck with an unidentified object and temporarily rendered unconscious. When she awoke and tried to get up, Appellant hit her again. Seymour fell to the concrete floor in the utility room and again lost consciousness. At some point, Appellant also shot a family picture and fired several shots into the dining room.

Sometime after Seymour regained consciousness, Appellant grabbed her again by her hair and dragged her to a hot water tank. He told her he was going to take her to Arkansas where he thought her boyfriend lived and that he would "take care of both of [them]." He also threatened Montez, Seymour's granddaughter. He stated he had "already . . . killed three men, and one more wasn't going to make any difference." Seymour testified she did not believe he had killed three men, but that she was afraid he was going to kill her.

Appellant attempted to stand, but fell to the ground and said he had "blown [his] f— knee." Seymour asked Appellant, who was incapacitated and in considerable pain, if she could get a warm cloth for his knee. When Appellant consented, Seymour went into the bedroom and pushed Appellant's rifle under the bed. She then went to another room, got a robe, and ran out of the house through the front door.

Seymour stopped a passerby driving down the street in a van and asked for help. The driver nodded to her and drove away. She knocked on the doors of several neighborhood houses, but got no answer. When she went to her next-door neighbor's house, he let her in and called the police. After the police arrived, Seymour was taken to a local hospital and received care in the emergency room before recounting her ordeal to the police.

Appellant told the police that Seymour assaulted him and cut him with a piece of glass, that they then had consensual sexual relations, and that Seymour's boyfriend then came in to the house and beat Appellant. At trial, Appellant testified that he went to Seymour's house, that they argued, and that Seymour then picked up the rifle and ran into the house. He also testified that when he went inside to get

---

**4.** Although Seymour could not remember when, at some point Appellant also pulled a phone line out of the wall in the dining room. The phone line outside the house had also been disconnected.

the rifle away from Seymour, the rifle went off several times accidentally.

At the close of evidence, the jury returned verdicts of guilty for both first-degree burglary and ACA, and recommended sentences of seven years imprisonment for burglary and thirteen years imprisonment for ACA. The trial court sentenced Appellant accordingly and ordered that the sentences run consecutively.

■ In Appellant's first point, he challenges the trial court's refusal to grant his motion for judgment of acquittal of ACA and the court's imposition of judgment and sentence on that charge. Appellant argues the "evidence was insufficient to prove beyond a reasonable doubt that [Appellant] gained entry into [Seymour's] house by, with, or through the use, aid, or assistance of a deadly weapon" as required by Section 571.015.

This court, in reviewing the sufficiency of evidence to support a conviction, considers the evidence and all reasonable inferences therefrom in a light most favorable to the verdict. *State v. Grim,* 854 S.W.2d 403, 411 (Mo. banc 1993). We consider whether the evidence, viewed through this lens, was sufficient to make a submissible case from which a rational juror could have found the appellant guilty beyond a reasonable doubt of the crime or crimes charged. *State v. Hopkins,* 841 S.W.2d 803, 804 (Mo.App. S.D.1992).

Section 569.160 states, in pertinent part, that a person commits the crime of burglary in the first degree if he knowingly enters unlawfully or knowingly remains unlawfully in a building or inhabitable structure for the purpose of committing a crime therein, and when in effecting entry or while in the building or inhabitable structure, ... he ...:

(1) Is armed with explosives or a deadly weapon or;

(2) Causes or threatens immediate physical injury to any person who is not a participant in the crime; or

(3) There is present in the structure another person who is not a participant in the crime.

2. Burglary in the first degree is a class B felony.

Section 571.015 provides, in pertinent part, that

any person who commits any felony ... by, with, or through the use, assistance, or aid of a dangerous instrument or deadly weapon is also guilty of the crime of [ACA] and, upon conviction, shall be punished by imprisonment ... for a term of not less than three years. The punishment imposed pursuant to this subsection shall be in addition to any punishment provided by law for the crime committed by, with, or through the use, assistance, or aid of a dangerous instrument or deadly weapon.

At the close of evidence, Appellant moved the trial court for judgment of acquittal as to the ACA charge, arguing that the evidence did not support a finding that the rifle was used to effectuate first-degree burglary as the State had charged that crime in the information. The State acknowledged that it was proceeding under the third amended information, which charged the Appellant with first-degree burglary in that he "knowingly entered unlawfully in an inhabitable structure ... for the purpose of committing assault therein, and while in such inhabitable structure there was present [Seymour], a person who was not a participant in the crime." Appellant argued that, on the basis of the plain language of Sections 569.160 and 571.015 and the holding in *State v. Dudley,* 51 S.W.3d 44 (Mo.App. W.D.2001), he was entitled to a judgment

of acquittal as to ACA because the State had failed to prove he had used a dangerous instrument or deadly weapon to effectuate first-degree burglary *as it was charged in the information.*

In light of Appellant's argument in support of his motion for judgment of acquittal, the State moved the trial court for leave to file a fourth amended information, in which the State proposed to charge that Appellant committed first-degree burglary in that he "knowingly entered *or remained* unlawfully in an inhabitable structure ... for the purpose of committing assault therein, and while in such inhabitable structure *[Appellant] was armed with a deadly weapon*" (emphasis added). The trial court denied the State's motion to amend the information, stating that it "[found] very little, if any, difference [between] what[ ][was] proposed by the fourth amended" information and the previous information and that there was no discernible difference in the "change of a word or two." The trial court also denied Appellant's motion for judgment of acquittal on the ACA charge.

Appellant's argument under this point is bottomed, in large part, on the holding in *Dudley.* In that case, the defendant was convicted of one count each of second-degree burglary [5] and second-degree murder, as well as two counts of ACA. *Id* at 47. In charging the defendant with second-degree burglary, the State alleged that he "knowingly entered unlawfully in an inhabitable structure ... for the purpose of committing stealing therein." *Id.* at 52 n. 2. In reversing the conviction of ACA as it related to the burglary count, the western district of this court noted that there was "nothing in the record from which a reasonable jury could infer that [the defendant] entered the victim's house unlawfully by, with, or through the use,

aid, or assistance of the gun." *Id.* at 52. Rather, the court said, "the only evidence of entry was that [the defendant] and [the codefendant] entered the house by kicking in the door." *Id.*

■ Appellant argues that the facts in *Dudley* are indistinguishable from the instant case, where the evidence suggested Appellant broke into Seymour's home by breaking the window in the back door and forcing that door open, without using the rifle. At the very least, argues Appellant, no evidence was presented from which a reasonable juror could have determined Appellant *entered* the home "by, with, or through the use, assistance, or aid" of the rifle as required by Section 571.015. Appellant states, correctly, that "[t]o support [a] conviction, the State must prove beyond a reasonable doubt that [a defendant] committed each element of the offense charged." *State v. Johnson,* 741 S.W.2d 70, 73 (Mo.App. S.D.1987). Appellant contends the State failed to meet this burden where the ACA count was concerned for the same reason enunciated by the court in *Dudley.* We agree.

Apparently conceding the logic of the court's holding in *Dudley,* the State argues *Dudley* is distinguishable from the instant case "because the underlying felony in the burglary charge here is assault and in *Dudley* the underlying felony was stealing." Without offering guidance as to why this is a meaningful observation, the State posits a distinction between the two cases based on the fact that in *Dudley*

the defendant ... believed no one was in the house when [he] knowingly entered the house unlawfully for the purpose of stealing. The defendant did not use the gun until the victim came home while [he was] in the course of stealing from

5. Section 569.170.

the house. Thus, in *Dudley*, there was no evidence that the defendant used the gun unlawfully entering the house *or* for the purpose of stealing. Therefore, the defendant in *Dudley* did not use the gun during the course of the burglary

(emphasis added, internal citations omitted).

■ Sections 569.160–.170, however, do not require, as the State suggests, that to be guilty of burglary, a person must enter a dwelling unlawfully *or* for the purpose of committing a crime therein. Rather, the statutes define burglary, in pertinent part, as knowingly entering a building or inhabitable structure unlawfully *"for* the purpose" of committing a crime therein. Sections 569.160, 569.170 (emphasis added). Therefore, a person commits ACA in connection with burglary not, as the State suggests, if he or she uses a dangerous instrument or deadly weapon *either* to effectuate unlawful entry to a building *or* for the purpose of committing the denominated crime therein; the crime of ACA is committed in a burglary setting if the weapon or instrument is used to *gain entry for the purpose* of committing a crime therein. Stated differently, the prosecutor here was partially correct when he surmised that if the trial court accepted Appellant's argument in support of his motion for acquittal,

> then the only time the gun is ever relevant [is] if it's used to basically shoot the door open. Or maybe if somebody comes to the door and you point it at them and say [']open the door,['] that's the only way that you could ever commit—have armed criminal action with a burglary .... even though *the crime that they're going to commit* is being committed by, with, and through the aid of a deadly weapon. Now, I can't believe that that's the legislature's intent

(emphasis added). Notwithstanding the prosecutor's incredulity, that is precisely the effect of the combination of Sections 569.160 and 571.015, as the State charged Appellant with violating the former. As the State drafted the information here, the crime of first-degree burglary was completed upon Appellant's unlawful entry into Seymour's home with the intent to assault her and with Seymour in the house at the time of entry. What did or did not follow upon his unlawful entry is wholly immaterial to a determination whether Appellant committed the crime of first-degree burglary, as it was charged here. It follows that, in order for Appellant to have committed ACA in the course of committing first-degree burglary, as that crime was charged here, he must have gained entry "by, with, or through the use, assistance, or aid of" the rifle, most likely in a manner similar to one imagined and described to the trial court by the prosecutor, and a person not participating in the crime, in this case Seymour, must have been present in the home when Appellant entered. No evidence was presented suggesting this occurred.

We are compelled to emphasize that our holding is limited to a finding that the evidence was insufficient to support a conviction of ACA arising out of first-degree burglary *as it was charged in the third amended information.* As previously indicated, Section 569.160 defines burglary in the first degree as entering or remaining unlawfully in a building or inhabitable structure, with the intent to commit a crime therein, when one or more of three circumstances also exist: 1) the perpetrator is armed with an explosive or deadly weapon, 2) he or she causes or threatens immediate physical injury to a non-participant in the crime, or 3) a non-participant in the crime is present in the building when the perpetrator effectuates entry. Here, the third amended information al-

leged the presence of the third of these circumstances, namely, that Seymour was present at the time Appellant entered her home unlawfully. Faced with Appellant's motion for judgment of acquittal as to the ACA charge, the prosecutor, presumably recognizing for the first time the threat that charging Appellant in this manner posed to the accompanying ACA charge, moved the trial court for leave to amend the information to allege that Appellant entered "or remained" unlawfully in Seymour's home and that "while in [the home] he was armed with a deadly weapon," thereby meeting the first, rather than the third, of the three criteria for charging Appellant with first-degree burglary.

The trial court denied the State's motion, stating that it failed to appreciate how the change of "one or two words" in the information might cure the defect alleged by Appellant in his motion for acquittal. Appellant correctly notes that given the trial court's ruling, the State "was therefore bound to prove what it had charged in the third amended information[.]" We need not determine, and therefore express no opinion concerning, whether the evidence was sufficient to support a charge of ACA in connection with first-degree burglary as the State proposed to charge the latter crime in its fourth amended information. It is enough to state that no credible evidence supported a finding that Appellant committed first-degree burglary, in the manner alleged by the State in its third amended information, "by, with, or through the use, assistance of" the rifle. Appellant's conviction and sentence for ACA must therefore be, and is hereby, reversed. In all other respects, the judgment of the trial court is affirmed.[6]

MONTGOMERY, P.J., and BARNEY, J., concur.

---

**6.** Appellant's second point, in which he challenges the consecutive nature of his sentences for first degree burglary and ACA, is rendered moot by our holding and is, therefore, not considered.