STATE of Missouri, Plaintiff–Respondent,

v.

Darrin R. MEUIR, Defendant–Appellant.

No. 25232.

Missouri Court of Appeals, Southern District, Division Two.

July 7, 2004.

Ellen H. Flottman, Columbia, MO, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen.; Patrick T. Morgan, Asst. Atty. Gen., Jefferson City, MO, for respondent.

JEFFREY W. BATES, Judge.

By a second amended information, Darrin Meuir ("Defendant") was charged with committing the class A felony of robbery in the first degree and the unclassified felony of armed criminal action ("ACA").

*See* § 569.020; § 571.015.[1] A jury convicted Defendant of each offense. As a prior and persistent offender, he was sentenced by the trial court to 20 years imprisonment for the robbery conviction. He received a concurrent sentence of 10 years imprisonment for the ACA conviction.

Defendant presents two points in his appeal. Point I challenges the sufficiency of the evidence to support Defendant's ACA conviction. Point II challenges the sufficiency of the evidence to support Defendant's conviction for first-degree robbery. We affirm in part and reverse in part.

## I. Standard of Review

When reviewing the sufficiency of evidence to support a criminal conviction, an appellate court gives great deference to the trier of fact. *State v. Chaney*, 967 S.W.2d 47, 52 (Mo. banc 1998). Reliability and credibility are issues for the jury. *State v. Sumowski*, 794 S.W.2d 643, 645 (Mo. banc 1990). We are not a " 'super juror' with veto powers" over the factfinder. *State v. Grim*, 854 S.W.2d 403, 414 (Mo. banc 1993). Therefore, we accept as true all evidence tending to prove the defendant's guilt, together with inferences favorable to the State that can be reasonably drawn therefrom; we disregard all contrary evidence and inferences. *State v. Dulany*, 781 S.W.2d 52, 55 (Mo. banc 1989). The test is whether the evidence, so viewed, was sufficient to make a submissible case from which rational jurors could have found beyond a reasonable doubt that defendant was guilty. *State v. Webber*, 982 S.W.2d 317, 324 (Mo.App. 1998). We have summarized the evidence presented at trial in accordance with these principles.

## II. Facts and Procedural History

Defendant and Christopher Shipman ("Shipman") had been acquainted since 1996. Defendant knew Shipman was a drug addict. On September 12, 2001, they spent most of the day together at Shipman's residence. While there with Defendant, Shipman smoked a large quantity of crack cocaine. As Shipman began "coming down" from the effects of the drug, he started craving more of it.

In the early morning hours of September 13, 2001, Shipman and Defendant drove in Defendant's Chevrolet Cavalier to Keller's Truck Stop ("the store") in Miner, Missouri. Between 1:00 and 2:00 a.m., they entered the store through the south side door, which was the only one left unlocked after 11:00 p.m. The clerk, Lois Lutes ("Lutes"), noticed them because Shipman was very tall with blonde hair in a ponytail, and Defendant was a lot shorter with darker-colored hair. Both men were wearing blue jeans, and Shipman had on a T-shirt. Lutes asked if she could help them find anything. There was another customer playing a video game in the back part of the store. When Defendant and Shipman saw the other customer, they turned around and walked out.

About 3:00 a.m., Defendant and Shipman drove back to the vicinity of the store. Defendant backed his car off of Highway H, which ran parallel to the store, and stopped with the vehicle parked on the grass behind a privacy fence about 100 yards away. Shipman put on a long, brown shirt over his T-shirt and left the vehicle with a gas mask, a .22 starter's pistol and Defendant's brown jersey gloves. Defendant stayed in the driver's seat of the car. A .30–06 rifle was stuck between the console and the passenger's seat. The rifle was fully loaded with four

1. All references to statutes are to RSMo (2000).

rounds in the magazine and one in the chamber. It was equipped with a scope, but the mounts were the "see-through" variety that also permitted a shooter to utilize the gun's iron sights. The barrel of the rifle was pointed toward the passenger seat floorboard, and the stock of the rifle was resting beside Defendant's right arm. The rifle was so positioned that Defendant could reach down and pick it up with his right hand. Sitting in the driver's seat, Defendant would have been able to point the rifle anywhere down Highway H and shoot it. A bullet fired from this rifle would be powerful enough to penetrate the vest-type flak jackets issued to police officers.

Lutes was alone in the store when Shipman came back this time. He was wearing the gas mask to cover his face, and he had the jersey gloves on his hands. He pointed the starter's pistol at Lutes and demanded the cash from the register. While walking into the circular island area where the register was located, Lutes hit a panic button that triggered a silent alarm. Lutes opened the register with a key, and Shipman removed the entire cash drawer, containing about $600, from the machine. Shipman ran out of the store's south door and headed southwest with the drawer and money. The robbery took about three minutes.

After leaving the store, Shipman ran back toward Defendant's car. He had placed the pistol on top of the cash drawer, which he was holding with his left hand. He ran around the end of the fence and back to the vehicle. After opening the door with his right hand, he pulled the gas mask off and pitched it inside the car. He backed into the car, set the gun and cash drawer down and told Defendant to drive. Defendant pulled onto Highway H, drove north and then turned east onto Highway HH. Highways H and HH intersect about one mile from the store. After staying on Highway HH for a short distance, Defendant entered the southbound lanes of Interstate 55 ("I–55") and drove toward Sikeston.

Officer Donald Massey ("Officer Massey") was dispatched to the store after Lutes hit the alarm. After interviewing Lutes briefly and relaying her description of the robber to other officers, Officer Massey began looking for evidence at the scene. In the grass south of the store's parking lot, he found one set of footprints in the dew. The footprints led to a privacy fence, about six feet high, approximately 100 yards from the store. On the opposite side of the fence, the footprints continued and intersected a single set of tire tracks left by a vehicle in the dewy grass. The tracks stopped at the passenger's door of the vehicle. Officer Massey also found a comb containing brown hairs and a baseball cap lying right beside the tire tracks. The fence was constructed in a way that allowed him to see the south door of the store by looking through gaps between the planks.

At 3:20 a.m., Officer Anthony Moody ("Officer Moody") was on patrol in the northbound lanes of I–55 when he received a report that an armed robbery had occurred at the store. He noticed a Chevy Cavalier enter the southbound lanes of I–55 from Highway HH. Since there was almost no traffic on the road and the store was only a short distance south of Highway HH, Officer Moody became suspicious that the vehicle had been involved in the robbery. Using radar, he clocked the vehicle going only 45 m.p.h. in a 70 m.p.h. zone. As Officer Moody met up with the oncoming vehicle, he turned on his spotlight and observed two males in the car. The passenger fit Lutes' description of the robber as a male with long blonde hair in a ponytail. Officer Moody crossed the medi-

an and followed the car until it exited I–55 and went into Sikeston. At that point, Miner City Police Officer Roger Moore ("Officer Moore") took over the pursuit.

After Defendant and Shipman entered the Sikeston city limits, Officer Moore was assisted in the pursuit by Sikeston city police officers. Moore kept Defendant's car in sight the entire time until it was stopped. Defendant and Shipman were arrested, and the Cavalier was searched. Inside the car, police found the cash drawer containing $618 in cash and coin, the .22 starter's pistol, gas mask, jersey gloves and loaded .30–06 rifle.

After Shipman was arrested, he confessed to robbing the store in order to obtain money to buy more drugs. He later pled guilty to first-degree robbery.

Defendant was charged with first-degree robbery and ACA. The robbery charge alleged that Defendant "forcibly stole a cash drawer and lawful currency in the possession of Lois Lutes of Keller's Truck Stop, Miner, Missouri, [and] the defendant threatened the use of what appeared to be a deadly weapon." The ACA charge alleged that Defendant "committed the foregoing felony of robbery in the first degree by, with and through the use, and aid of a dangerous instrument, to wit: a 30–06 Rifle."

At trial, Defendant's counsel filed a motion for judgment of acquittal at the close of the State's evidence, which was overruled. After calling Shipman as a witness for the defense, counsel filed another motion for judgment of acquittal at the close of all of the evidence.[2] It also was overruled. The first-degree robbery charge against Defendant was submitted on an accomplice liability theory. *See* § 562.041.1. After submitting facts suffi-

cient to prove Shipman committed first-degree robbery, the fifth paragraph of the verdict-directing instruction on Defendant's robbery charge hypothesized that "with the purpose of promoting or furthering the commission of the robbery in the first degree, the defendant knowingly aided and encouraged Christopher Shipman by driving him to the scene of the robbery and driving him away from the scene of the robbery, thereby aiding his escape[.]" The ACA verdict-directing instruction submitted one additional element: "defendant knowingly committed that offense with the assistance of a deadly weapon[.]" After the jury retired to deliberate, it sent out a note that stated as follows:

> Instruction 6
>
> Fifth statement
>
> to be convicted of robbery in the first degree do you have to believe that he knew before *and* after or either or?

(Emphasis in original.) The judge answered the inquiry by telling the jury to "[p]lease be guided by the instructions." Thereafter, the jury returned verdicts finding Defendant guilty of each offense. In a post-trial motion, defendant again challenged the sufficiency of the evidence to find him guilty of either offense. The motion was overruled, and this appeal followed.

### III. Discussion and Decision

■ Defendant's first point challenges the sufficiency of the evidence to support his conviction for ACA. To be found guilty of this offense, there must be proof Defendant committed "any felony under the laws of this state by, with, or through the use, assistance, or aid of a dangerous instrument or deadly weapon...." § 571.015.1. Here, the underlying felony

---

**2.** The gist of Shipman's testimony was that he planned and carried out the robbery on his own without Defendant's knowledge or participation.

was first-degree robbery. The State charged Defendant with forcibly stealing a cash drawer and money from Lutes by threatening "the use of what appeared to be a deadly weapon." This is an unmistakable reference to the .22 starter's pistol Shipman used during the robbery. The ACA charge against Defendant, however, was based on the specific allegation that he committed first-degree robbery of the store by, with or through the use and aid of the .30–06 rifle.

Defendant argues the evidence, that he remained in the car with the .30–06 rifle while Shipman robbed the store using a different gun, is insufficient to support a conviction for ACA. With commendable candor, the State concedes this to be true, based on the specific manner in which Defendant was charged with first-degree robbery and ACA. After independently reviewing the matter, we agree.

Our recent decision in *State v. Carpenter*, 109 S.W.3d 718 (Mo.App.2003), is directly on point. There, Carpenter came to the home of his former girlfriend, Seymour. Carpenter was armed with a .22 rifle, but he gained entrance to the home by breaking out the back-door glass and kicking the door open. Once inside, Carpenter physically assaulted Seymour and fired the rifle several times, causing damage to the interior of her home. *Id.* at 719–20. Carpenter was charged committing burglary in the first degree and ACA. In a third amended information, Carpenter was charged with committing first-degree burglary by knowingly entering unlawfully an inhabitable structure for the purpose of committing assault therein while a person not a participant in the crime was present inside. *Id.* at 721. The ACA charge was predicated on the commission of the felony of first-degree burglary. Carpenter was convicted of each offense. On appeal, we held that the evidence was insufficient to support the ACA conviction:

> As the State drafted the information here, the crime of first-degree burglary was completed upon Appellant's unlawful entry into Seymour's home with the intent to assault her and with Seymour in the house at the time of entry.... It follows that, in order for Appellant to have committed ACA in the course of committing first-degree burglary, as that crime was charged here, he must have gained entry "by, with, or through the use, assistance, or aid of" the rifle ... and a person not participating in the crime, in this case Seymour, must have been present in the home when Appellant entered. No evidence was presented suggesting this occurred.

*Id.* at 723.

Here, Defendant was charged with committing first-degree robbery, via accomplice liability, because Shipman forcibly stole the cash drawer and money from Lutes by threatening her with the .22 starter's pistol. Defendant was charged with ACA for committing first-degree robbery by, with and through the use and aid of the .30–06 rifle. As to the ACA charge, the State concedes there was no proof Defendant used the .30–06 rifle to commit first-degree robbery. The State bears the burden of proving beyond a reasonable doubt each element of the offense charged. *See State v. Johnson*, 741 S.W.2d 70, 73 (Mo.App.1987). Therefore, Defendant's conviction for ACA cannot stand. His first point is granted.

Defendant's second point challenges the sufficiency of the evidence to support his conviction for first-degree robbery. He argues the State's evidence was insufficient to prove beyond a reasonable doubt that Defendant aided or assisted Shipman prior to the robbery. Instead, Defendant

claims he was, at most, an accessory after the fact.

■ As a preliminary matter, we note Defendant's point relied on posits trial court error in overruling Defendant's *motions* for judgment of acquittal. He filed one at the close of the State's case and one at the close of all of the evidence. Since Defendant argues that "the defense case cannot be considered by this Court on the question of whether sufficient evidence supported the robbery conviction," we infer Defendant is asking us to review the denial of the motion filed at the close of the State's case. We cannot do so. After Defendant's first motion was overruled, he presented evidence in the form of Shipman's testimony. By doing so, Defendant waived any claim of error relating to the denial of the motion he filed at the close of the State's case. *State v. Smith*, 944 S.W.2d 901, 916 (Mo. banc 1997). We review only whether the trial court erred in denying the motion for judgment of acquittal filed at the close of all the evidence. *State v. Wright*, 934 S.W.2d 575, 580 (Mo.App.1996). Consequently, we reject Defendant's assertion that we may not consider Shipman's testimony, insofar as it aids the State's case, in deciding whether there was sufficient evidence to support Defendant's conviction for first-degree robbery. "When a defendant introduces evidence on his own behalf, after the overruling of his motion for judgment of acquittal at the close of the State's case, the sufficiency of the evidence must be determined upon the entire record considering any incriminating evidence developed during the defendant's case." *State v. Rivers*, 554 S.W.2d 548, 550 (Mo.App.1977); *see also State v. Parcel*, 546 S.W.2d 571, 573 (Mo.App.1977).

■ Turning to the merits of Defendant's argument, we begin by briefly considering what must be proven to establish accomplice liability. Missouri has eliminated the distinction between principal and accessory liability by making all persons who act in concert to commit a crime equally guilty. *State v. May*, 71 S.W.3d 177, 183 (Mo.App.2002). "An accomplice is one who, before or during the commission of a crime, intentionally and knowingly aids or encourages the commission of a crime, and an accomplice is criminally responsible for that offense." *Id.* "Any evidence fairly showing affirmative participation by defendant in aiding another to commit a crime is sufficient to support conviction." *State v. Hibbert*, 14 S.W.3d 249, 252 (Mo.App.2000). "Affirmative participation may be proven by circumstantial evidence, including presence at the scene of the crime, flight therefrom, and association with others involved before, during and after the commission of the crime." *Id.* at 253. We believe there was ample evidence presented that tended to prove Defendant affirmatively participated in aiding Shipman to commit the robbery of the store by acting as his lookout and getaway car driver.

■ Defendant and Shipman were together most of the day prior to the robbery. During that time, Shipman consumed a large quantity of crack cocaine in Defendant's presence. Defendant knew Shipman was addicted to drugs. They came to the store together shortly before the robbery occurred. A reasonable juror could infer that they did so for planning purposes. Once they entered the store, they looked around, bought nothing, left immediately when they saw there was another customer inside and returned a short time later with weapons and a disguise for Shipman to wear. Furthermore, upon returning, Defendant backed his car off Highway H 100 yards from the store and hid the vehicle behind a privacy fence. He parked the car in a position where he could

see the south door of the store through gaps in the fence, and he also had a clear view of Highway H. He was armed with a loaded .30–06 rifle and had it positioned so he could easily use the weapon while sitting in the driver's seat of the car. This weapon had mechanical sights that could be used at night, and it was powerful enough to shoot long distances and penetrate typical police body armor. Defendant waited in this hidden location while Shipman robbed the store. Upon Shipman's return, Defendant drove himself and Shipman from the scene. They were apprehended minutes later by police while still in possession of the stolen money, gas mask, gloves, starter's pistol and .30–06 rifle.

Proof that a defendant acted as a lookout while someone else committed a robbery has been held to be sufficient evidence of encouragement and participation to create accomplice liability. *See State v. Gregory*, 406 S.W.2d 662, 665 (Mo.1966); *State v. Washington*, 901 S.W.2d 276, 280 (Mo.App.1995); *State v. Crews*, 585 S.W.2d 131, 136–37 (Mo.App.1979). So has proof that a defendant acted as the driver of a getaway vehicle for a robbery. *See State v. Chernick*, 280 S.W.2d 56, 59 (Mo.1955); *State v. Carter*, 849 S.W.2d 624, 626–27 (Mo.App.1993); *State v. Blaylock*, 705 S.W.2d 30, 34 (Mo.App.1985); *State v. Evans*, 694 S.W.2d 860, 862 (Mo.App.1985); *State v. Umphfrey*, 694 S.W.2d 816, 819 (Mo.App.1985); *State v. Carr*, 659 S.W.2d 275, 276 (Mo.App.1983); *State v. Briscoe*, 646 S.W.2d 424, 428 (Mo.App.1983). Considering all of the evidence and inferences favorable to the verdict, we find the State presented sufficient evidence from which rational jurors could have found beyond a reasonable doubt that Defendant was guilty of first-degree robbery, on an accomplice liability theory, by driving Shipman to the store, acting as his lookout during the robbery, and aiding his escape from the scene of the crime.

In so holding, we have considered the arguments advanced by Defendant, but we find them unpersuasive. First, Defendant claims the jury's note shows the State's evidence was insufficient. We disagree. The uncontroverted evidence presented *by Defendant* showed he knew Shipman had robbed the store when he returned to the car. Nevertheless, Defendant willingly drove Shipman from the scene of the crime. As the above-cited cases demonstrate, this act alone would be sufficient to create accomplice liability. Therefore, even if the jury concluded Defendant did not know the robbery had occurred until Shipman returned to the car, the evidence was sufficient to support the verdict returned. Second, we find the principal case upon which Defendant relies, *State v. Gallimore*, 633 S.W.2d 232 (Mo.App.1982), to be factually distinguishable. Defendant correctly notes that, in *Gallimore*, the State's evidence only proved the defendant was present about two and one-half blocks from the scene of the robbery after the crime was committed. *Id.* at 236–37. In particular, we pointed out "[t]here was no evidence that defendant was ever at the store or acted as a lookout for the robber or later had any of the fruits of the crime in his possession." *Id.* at 237. Thus, the evidence which was lacking in *Gallimore* is present here. Defendant's second point is denied.

Defendant's conviction and sentence for robbery in the first degree is affirmed. His conviction and sentence for ACA is reversed.

SHRUM, J., and RAHMEYER, C.J.–P.J., concur.