

# In the
# Missouri Court of Appeals
# Western District

STATE OF MISSOURI,

        **Respondent,**

v.

**KHIRY DEVON SUMMERS,**

        **Appellant.**

**WD76911**

**OPINION FILED:**

**December 16, 2014**

---

**Appeal from the Circuit Court of Cole County, Missouri
The Honorable Patricia S. Joyce, Judge**

**Before Division Four: Alok Ahuja, C.J. Presiding,
Victor C. Howard, and James Edward Welsh, JJ.**


Khiry D. Summers appeals his convictions, following a jury trial, of second-degree (felony) murder (§ 565.021, RSMo[1]), first-degree robbery (§ 569.020), and armed criminal action, (§ 571.015), for which he was sentenced to twenty-three years' incarceration. Summers also challenges his consecutive sentence for armed criminal action. We affirm the convictions but remand for resentencing on the armed criminal action conviction.

---

[1]Statutory references are to the Revised Statutes of Missouri (RSMo) 2000, unless otherwise noted.

**Background**

Viewed in the light most favorable to the verdict,[2] the evidence at Summers' trial showed that in April 2012, Summers and two others, Tracy Session and Brandon Chase, conspired to rob Keith Mosley of some marijuana.  They arranged to meet with Mosley on the pretext of buying marijuana from him, but rather than purchase the marijuana, they planned to rob Mosley of it.

On April 22, 2012, Summers, Chase and Session set out to meet with Mosley at an apartment in Jefferson City.  Summers was armed with his brother's .380-caliber Ruger handgun, and Session was armed with a .40-caliber Glock handgun.  When the three arrived at the apartment, they found Mosley there with another man, Brent Slaughter.  Chase and Summers, who had covered his face with a black T-shirt, entered the apartment.  Session waited outside.

Once inside, Summers pulled his .380-caliber handgun on Mosley and demanded that he hand over the marijuana.  Mosley walked toward Summers and attempted to reason with him.  Summers tried to grab the marijuana from Mosley, but Mosley put it behind his back.  Summers then fired three shots into the floor.  One of the bullets ricocheted and struck Slaughter in the leg.  Hearing the shots, Session opened the door and fired one .40-caliber bullet into Mosley's abdomen.  The bullet lacerated Mosley's spine and he fell to the floor, dropping the marijuana.  While Mosley lay on the floor, Summers took the two bundles of marijuana that Mosley had been holding.  Summers, Session and Chase then left the apartment.

When the police arrived, they found Mosley lying in the doorway of the apartment.  Officers found a single .40-caliber shell casing about four to five feet from the apartment's front door.  They also observed three bullet marks in the dining room floor and found three .380-caliber shell casings that were later matched to Summers' brother's gun.  The officers found a

---

[2]*State v. Baumruk*, 280 S.W.3d 600, 607 (Mo. banc 2009).

small amount of marijuana on the floor. Mosley was taken to a local hospital and then airlifted to a hospital in Columbia, where he died. A .40-caliber bullet was recovered from Mosley's body during the autopsy.

Summers fled to Illinois but returned to Jefferson City a few days later and surrendered to police. In the presence of his attorney and after being read his *Miranda*[3] rights, Summers gave a statement detailing his involvement in the robbery and shooting. It was consistent with the foregoing recitation of facts. A videotaped recording of Summers' statement was admitted into evidence at his trial and played to the jury. A transcript of his statement also was admitted into evidence at trial.

At trial, Summers recanted his statement to the police. He claimed that his attorney had created the story about him being involved in the robbery and advised him to use it.[4] Summers told the jury, instead, that he and Chase had gone to Mosley's apartment for Chase to buy some marijuana for him while he remained outside. He said that when he heard an argument break out inside the apartment, he opened the door and fired some shots into the floor. Summers claimed that he then ran to his fiancée's house, which was nearby.

The circuit court submitted charges of second-degree felony murder, robbery in the first degree, and armed criminal action to the jury. The jury returned guilty verdicts on all three counts. The court sentenced Summers as a persistent misdemeanor offender to concurrent terms of twenty years' imprisonment for felony murder and first-degree robbery, and a consecutive sentence of three years' imprisonment for armed criminal action.

---

[3] *Miranda v. Arizona*, 384 U.S. 436 (1966).

[4] In rebuttal, the attorney denied this, stating that she had advised Summers only "to confess to what his involvement was" in order, primarily, to clear up any misconceptions about who shot and killed Mosley.

**Discussion**

Summers raises four points on appeal. His first three points all are dependent upon the success of Point I, in which he contends that the circuit court erred in denying his motions for acquittal on first-degree robbery because the State failed to produce sufficient evidence that he "used force or the threat of force to effectuate a stealing," in that "there was no evidence that any force used by [him] effectuated his taking of the green plant material" from Mosley. As to Points II and III, Summers argues that because first-degree robbery was the underlying offense for the armed criminal action and felony murder convictions, if the first-degree robbery charge is vacated, then those two convictions also must be vacated.

In reviewing the sufficiency of the evidence, we accept as true all evidence favorable to the State and disregard all evidence and inferences to the contrary. *State v. Crawford*, 68 S.W.3d 406, 407-08 (Mo. banc 2002). Our review is "limited to determining whether there is sufficient evidence from which a reasonable juror might have found the defendant guilty beyond a reasonable doubt." *Id.* at 408. When reviewing sufficiency of the evidence to support a criminal conviction, we do not act as a "super juror" with veto powers; rather, we give great deference to the jury's findings. *State v. Nash*, 339 S.W.3d 500, 509 (Mo. banc 2011). To the extent that our review involves the interpretation of a statute, that is an issue of law which we review *de novo*. *See State v. Porter*, 241 S.W.3d 385, 390 (Mo. App. 2007).

"In considering the sufficiency of the evidence, there must be sufficient evidence of each element of the offense." *State v. Dixon*, 70 S.W.3d 540, 544 (Mo. App. 2002). "The elements of an offense are derived from the statute establishing the offense or, when relevant, common law definitions." *Id.* (citing *State v. McTush*, 827 S.W.2d 184, 188 (Mo. banc 1992)). The elements

4

of first-degree robbery are derived from section 569.020, the statute establishing that offense. Section 569.020.1 provides:

> A person commits the crime of robbery in the first degree when he forcibly steals property and in the course thereof he, or another participant in the crime,
>
> > (1) Causes serious physical injury to any person; or
> >
> > (2) Is armed with a deadly weapon; or
> >
> > (3) Uses or threatens the immediate use of a dangerous instrument against any person; or
> >
> > (4) Displays or threatens the use of what appears to be a deadly weapon or dangerous instrument.

The definitive issue here is whether the evidence fits within the definition of first-degree robbery in section 569.020 -- specifically, whether it supports a finding that Summers "forcibly stole" property from Mosley. As defined by statute, "a person 'forcibly steals,' and thereby commits robbery, when, *in the course of* stealing, . . . he uses or threatens the immediate use of physical force upon another person for the purpose of [p]reventing or overcoming resistance to the taking of the property or to the retention thereof immediately after the taking[.]" Section 569.010(1)(a) (emphasis added). "Stealing" is defined as appropriating the property of another "with the purpose to deprive [him] thereof, either without [his] consent or by means of deceit or coercion." § 570.030.1, RSMo Cum. Supp. 2011.

Summers states that despite initially charging him with first-degree robbery under an "accomplice liability" theory, the State abandoned accomplice liability in submitting first-degree robbery to the jury. This is the basis of his claim that he could be convicted of robbery "based only on his own actions" and that the evidence failed to establish that "his own use or threatened use of physical force" caused Mosley "to deliver up" the marijuana, as stated in the verdict

5

director. Summers argues that it was Session's "intervening act" of shooting Mosley that allowed Summers to take the marijuana, and not his own use or threat of force. In other words, Summers argues, "without accomplice liability as part of the instruction, [Session's] act of shooting [Mosley] breaks the chain of causation between any force or threat of force by [Summers] and [Summers'] taking the green plant material from [Mosley]."

This argument is without merit. As noted, we address a challenge to the sufficiency of the evidence by looking to the elements of the crime charged. *See State v. Hines*, 377 S.W.3d 648, 655 (Mo. App. 2012). In doing so, we "consider not only the circumstances immediately surrounding the alleged robbery but events prior to the robbery to determine whether the elements of the offense are satisfied." *State v. Neal*, 328 S.W.3d 374, 379 (Mo. App. 2010). "The language 'in the course of' and 'in the course thereof' modify both the statutory definition of 'forcibly steals,' the first element of first-degree robbery, and the second element, [in this case, 'is armed with a deadly weapon']." *See id*. (quoting §§ 569.010(1) and 569.020). "Both phrases have been interpreted to mean that the entire course of the robbery must be considered to determine whether the elements have been satisfied." *Id*. (citing *State v. Yancy*, 779 S.W.2d 712, 714-15 (Mo. App. 1989)). As explained in *Yancy*:

> "In the course" of forcible stealing is a broad term. It covers the whole transaction or occurrence. The statute does not state that during the actual taking of the property appellant must simultaneously display or threaten the use of a deadly weapon, but only that "in the course thereof" defendant uses or threatens to use a weapon. As long as a weapon is used "in the course" of forcible stealing, the offense is robbery in the first degree.

779 S.W.2d at 715.[5] Under *Yancy*, if the use of force or the threat of the immediate use of force "precedes or is contemporaneous with the taking, the offense of robbery is complete." *Id*. "And

---

[5]*Superseded by statute on other grounds*, as stated in *State v. Kelly*, 43 S.W.3d 343, 349 (Mo. App. 2001).

6

if the use of a weapon is a part of the whole, single, transaction, the offense is robbery. It is the use of a weapon 'in the course' of forcible stealing, that makes the offense robbery in the first degree." *Id*.

Here, the record contains sufficient evidence that Summers' conduct satisfied the statutory elements for the crime of robbery in the first degree. Summers concocted a plan with Chase and Session to rob Mosley, and Summers participated in that robbery. Both Summers and Session were armed with a deadly weapon (a handgun). In the course of that robbery, Summers threatened Mosley with his handgun, demanded that he hand over the marijuana, and then shot three times into the floor (injuring Slaughter in the process). Session caused serious physical injury to Mosley by shooting him, and Summers then stole Mosley's marijuana. This evidence is sufficient to establish that Summers "forcibly stole" the marijuana and that he did so while "armed with a deadly weapon." Thus, the circuit court did not err in denying Summers' motions for acquittal or in entering judgment of conviction for first-degree robbery. Point I is denied.

Summers' Points II and III seek vacation of his convictions for armed criminal action and second-degree felony murder, both of which were charged in connection with the robbery. Summers concedes that the outcome of those points is dependent on the success of Point I. He raises no independent grounds on which those convictions should be reversed. Because there was sufficient evidence to support Summers' conviction of first-degree robbery, we affirm Summers' convictions on all three counts.

In his final point, Summers claims that the circuit court plainly erred in imposing a consecutive sentence for armed criminal action because the court did so under the mistaken belief that the applicable statute required it, resulting in manifest injustice and a miscarriage of justice.

7

"As a general proposition, a trial court has the discretionary authority to determine whether multiple sentences of imprisonment are to be served consecutively or concurrently." *Mosby v. State*, 236 S.W.3d 670, 679 (Mo. App. 2007). At Summers' sentencing hearing, the court stated:

> The Court, having considered the evidence and the sentence, sentences the defendant to twenty years on Count I, twenty years on Count II, and three years on Count III. I think the armed criminal action has to run consecutive.

The court's written judgment reflected that the sentences for felony murder and first-degree robbery were to be served concurrently, with the sentence for armed criminal action to be served consecutively. The circuit court's interpretation of the statute is incorrect. Section 571.015.1 provides, in relevant part, that "[t]he punishment imposed pursuant to this subsection shall be in addition to any punishment provided by law for the crime committed by, with, or through the use, assistance, or aid of a dangerous instrument or deadly weapon." As explained by our Supreme Court, the statute does not mandate that a sentence for armed criminal action be consecutive to a sentence for the underlying conviction. *State v. Treadway*, 558 S.W.2d 646, 653 (Mo. banc 1977);[6] *see also State v. Olney*, 954 S.W.2d 698, 700-01 (Mo. App. 1997).

Summers concedes that he has not preserved this claim for appellate review. Issues that were not preserved may be reviewed only for plain error under Rule 30.20. *State v. Baumruk*, 280 S.W.3d 600, 607 (Mo. banc 2009). Rule 30.20 authorizes this Court to review, in its discretion, "plain errors affecting substantial rights . . . when the court finds that manifest injustice or miscarriage of justice has resulted therefrom." Our Supreme Court has established a threshold review to determine if a court should exercise its discretion to entertain a Rule 30.20 review of a claimed plain error. First, we determine whether or not the claimed error "facially

---

[6]*Overruled on other grounds by Sours v. State*, 593 S.W.2d 208, 210 (Mo. banc 1980).

8

establishes substantial grounds for believing that 'manifest injustice or miscarriage of justice has resulted[.]'" *State v. Brown*, 902 S.W.2d 278, 284 (Mo. banc 1995) (quoting Rule 30.20). If not, we should not exercise our discretion to conduct a Rule 30.20 plain error review. If, however, we conclude that we have passed this threshold, we may proceed to review the claim under a two-step process pursuant to Rule 30.20. In the first step, we decide whether plain error has, in fact, occurred. *Baumruk*, 280 S.W.3d at 607. "All prejudicial error, however, is not plain error, and plain errors are those which are evident, obvious and clear." *Id*. In the absence of evident, obvious, and clear error, we should not proceed further with our plain error review. If, however, we find plain error, we must continue to the second step to consider whether or not a miscarriage of justice or manifest injustice will occur if the error is left uncorrected. *Id.* at 607-08.

Here, the circuit court's statement that it thought "the armed criminal action has to run consecutive" is a misstatement of the law. *See Treadway*, 558 S.W.2d at 653; *Olney*, 954 S.W.2d at 700-01. "When the record demonstrates that the trial court imposed consecutive sentences based on a misunderstanding of the statute, the defendant is entitled to re-sentencing." *State v. Scott*, 348 S.W.3d 788, 800 (Mo. App. 2011); *Olney* 954 S.W.2d at 700-01. "This is so even if it is likely the court will return the same sentence." *State v. Cowan*, 247 S.W.3d 617, 619 (Mo. App. 2008).

In *Olney*, this Court granted plain error review where the circuit court sentenced a defendant based on a mistaken belief that the sentence for armed criminal action must run consecutive to other sentences. 954 S.W.2d at 700-01. Relying on both *Treadway* and *Olney*, the Southern District did the same in *State v. Taylor*, 67 S.W.3d 713, 716 (Mo. App. 2002). As in this case, the circuit courts in both *Olney* and *Taylor* expressed the mistaken belief that armed criminal action sentences are required to be consecutive. Both were reviewed for plain error and

ultimately remanded for resentencing. *See Olney*, 954 S.W.2d at 700-01 (circuit court interpreted section 571.015.1's mandate that its sentence be imposed "in addition to any other punishment" to mean that "it's got to be a consecutive sentence"); *Taylor*, 67 S.W.3d at 715-16 (circuit court declined "to make a legal determination" as to whether the phrase "in addition to" in section 571.015 requires a consecutive or concurrent sentence).

Relying on those two cases, Summers argues that his sentence for armed criminal action should be remanded to the circuit court on the same basis. The State agrees, asserting that, based on the circuit court's mistaken belief that the armed criminal action sentence had to be served consecutively, that sentence should be remanded to the circuit court.

We concur. Here, the circuit court's misstatement of the law is sufficiently similar to those in *Olney* and *Taylor* as to also warrant plain error review, and based on that plain error review, we remand for resentencing on the same basis. Accordingly, we vacate Summers' armed criminal action sentence and remand for the circuit court to exercise its judicial discretion on whether that sentence should be imposed concurrently or consecutively.

## Conclusion

Based on the foregoing, we affirm the circuit court's judgment of guilt on all three charges, and we affirm the sentences for murder and robbery. We reverse and remand for resentencing as to the armed criminal action charge.

/s/ JAMES EDWARD WELSH
James Edward Welsh, Judge

All concur.

10