

# In the Missouri Court of Appeals
## Western District

| | | |
|---|---|---|
| STATE OF MISSOURI, | ) | |
| Respondent, | ) | |
| v. | ) | WD77034 |
| | ) | |
| DERRELL M. WADE, | ) | FILED: April 28, 2015 |
| Appellant. | ) | |

## APPEAL FROM THE CIRCUIT COURT OF JACKSON COUNTY
### THE HONORABLE DAVID M. BYRN, JUDGE

### BEFORE DIVISION FOUR: ALOK AHUJA, CHIEF JUDGE, PRESIDING,
### LISA WHITE HARDWICK AND MARK D. PFEIFFER, JUDGES

Derrell Wade appeals from his convictions for second-degree (felony) murder, first-degree robbery, two counts of armed criminal action, and one count of unlawful use of a weapon. Wade challenges the sufficiency of the evidence to support the felony murder, robbery, and armed criminal action convictions. He also contends the circuit court plainly erred in not *sua sponte* striking a venireperson. For reasons explained herein, we affirm.

### FACTUAL AND PROCEDURAL HISTORY

Viewed in the light most favorable to the verdict, the evidence was that, late in the evening of November 18, 2011, Patrick McCarthy and Russell Griffith drove to a gas station in Kansas City to meet with Nicholas Michael. Michael arrived

with James Vannest in Vannest's car.  Wade and two other men were standing at a bus station across from the gas station.  Wade walked to the gas station as Michael and Vannest arrived.  The two other men with Wade stayed at the bus stop.

Griffith got out of the car, and Wade said to him, "What's up, Red?"  Griffith got back into the car, and McCarthy went inside the gas station.  Michael also went inside the gas station.  Wade walked inside the gas station and stayed there for a short time without buying anything.  Wade watched McCarthy pay for some items and left.  Michael and McCarthy then walked out of the gas station and went back to Griffith's car.  Griffith sat in the driver's seat of the car, McCarthy sat in the front passenger seat, and Michaels sat in the back passenger seat.

Wade and the two men from the bus station approached on the driver's side of the car and spoke to Griffith and McCarthy about buying some PCP.  As they were talking, Wade walked away from the car but then returned and gestured at the two men.  Wade and the two men then began shooting at Griffith's car.  McCarthy got out of the car and fell on the ground.  Griffith's car began rolling out of the gas station lot, and the two men with Wade ran.  Wade approached McCarthy, took his money, shot twice at McCarthy, and ran.

McCarthy died as a result of his gunshot wounds.  Griffith and Michael were both injured.  Michael spoke to the police at the hospital and told them what happened.

2

At the scene, the police found 27 9mm spent cartridge casings. The casings were all fired from the same weapon, which was most likely a handgun. They found 11 7.62 spent shell casings that were most likely fired from a rifle. The police also found a .40 caliber spent shell casing and a live .40 caliber round. Typically, this type of ammunition is used in a handgun.

In December 2011, the police arrested Lorenzo Burns during a traffic stop and recovered a .40 caliber handgun. A ballistics analysis showed that the .40 caliber spent shell casing and the .40 caliber round found at the shooting scene came from this gun.

Griffith was able to identify Wade in the store's surveillance video and in photographs that the police showed him. Wade was arrested in April 2012, and he agreed to speak to the police. He initially denied being present at the gas station on the night of the shooting. When confronted with still photographs taken from the surveillance video, however, he changed his story. Wade admitted that he was at the gas station, but he said that his only interaction with McCarthy occurred when McCarthy asked him for fifty cents. Wade denied knowing or talking to Griffith. Wade admitted that he was armed and that he had given his gun to Burns.

The State charged Wade with second-degree (felony) murder, first-degree robbery, two counts of armed criminal action, and one count of unlawful use of a weapon. A jury trial was held. During the trial, the prosecutors called Duane Hill, a longtime friend of Wade's. Hill testified that, in November 2011, before the shooting, Wade had asked him if he wanted to participate in a couple of "jump

3

outs" with him.  When Hill asked what a "jump out" was, Wade explained that he would call someone that he knew carried a large amount of money or drugs and arrange a meeting, and then he would rob and kill that person.  Hill next saw Wade after the shooting.  Wade told Hill that he had called McCarthy as part of a set-up.  Wade told Hill that, when he signaled his two companions, one of them shot too soon.  Because Wade thought that this companion had "messed up," he split the money from the robbery with his son instead of that companion.

Wade's defense at trial was that he did not know the two men with him and that he merely facilitated a drug deal between them and McCarthy after they asked him where they could get some PCP.  Wade contended that he did not plan a robbery or murder and that he drew his gun and fired only because the other two men drew their guns and fired.  He claimed that the other two men were solely responsible for shooting and killing McCarthy because the bullets from his gun did not hit McCarthy.  Wade asserted that he should be held responsible only for taking advantage of the situation by picking up McCarthy's money after the shooting.  Wade did not testify or put on any evidence.

The jury found Wade guilty on all counts.  The court sentenced him to life in prison for felony murder, ten years for its accompanying count of armed criminal action, thirty years for robbery, ten years for its accompanying count of armed criminal action, and fifteen years for unlawful use of a weapon.  The court ordered the sentences for felony murder, robbery, and unlawful use of a weapon to run consecutively to each other, and the sentences for the two armed criminal action

4

counts to run concurrently with all counts, for a total of life plus forty-five years. Wade appeals.

**ANALYSIS**

In four of Wade's five points on appeal, he challenges the sufficiency of the evidence to support his convictions for second-degree (felony) murder, first-degree robbery, and the armed criminal action counts predicated on those crimes. When reviewing a challenge to the sufficiency of the evidence, our role "is limited to determining whether there is sufficient evidence from which a reasonable juror might have found the defendant guilty beyond a reasonable doubt." *State v. Crawford*, 68 S.W.3d 406, 408 (Mo. banc 2002). We consider the evidence and inferences in the light most favorable to the verdict, disregarding all contrary evidence and inferences. *Id*. at 407-08. We defer to the jury's credibility determinations, recognizing the jury was entitled to believe "all, some, or none" of the testimony of the witnesses. *Id*. at 408.

Because the robbery was the underlying offense for one of the armed criminal action convictions and Wade's felony murder conviction, we will first address Wade's contention in Point III that the evidence was insufficient to support his conviction for first-degree robbery. Section 569.020.1, RSMo 2000,[1] defines the crime of first-degree robbery:

> A person commits the crime of robbery in the first degree when he forcibly steals property and in the course thereof he, or another participant in the crime,

---

[1] All statutory references are to the Revised Statutes of Missouri 2000, as updated by the 2013 Cumulative Supplement.

(1) Causes serious physical injury to any person; or

(2) Is armed with a deadly weapon; or

(3) Uses or threatens the immediate use of a dangerous instrument against any person; or

(4) Displays or threatens the use of what appears to be a deadly weapon or dangerous instrument.

Wade asserts that there was not sufficient evidence to support a finding that he forcibly stole the money from McCarthy.  A person "forcibly steals" "when, in the course of stealing, . . . he uses or threatens the immediate use of physical force upon another person for the purpose of[ ] preventing or overcoming resistance to the taking of the property or to the retention thereof." § 569.010(1)(a).  "Stealing" is defined as appropriating another's property "with the purpose to deprive him or her thereof, either without his or her consent or by means of deceit or coercion."  § 570.030.1.  In this case, the jury was instructed to find Wade guilty of first-degree robbery if it believed, beyond a reasonable doubt, that Wade took money from McCarthy; that he did so for the purpose of withholding it from McCarthy permanently; that, in doing so, he used force against McCarthy for the purpose of overcoming resistance to the taking of the property; and that he was armed with a deadly weapon.

Wade argues that only the two men with him used force against McCarthy and that he merely took McCarthy's money after the fact.  Wade notes that, while the State charged him with first-degree robbery under an accomplice liability

6

theory, the State abandoned accomplice liability when it submitted the first-degree robbery verdict director to the jury. Because the State abandoned accomplice liability, Wade asserts that the State had to produce sufficient evidence that he alone used physical force on McCarthy to effectuate the taking of McCarthy's money. Wade contends that it was the other two shooters' intervening acts of firing 38 shots into the car, rather than his own use of force, that allowed him to take McCarthy's money.

While this appeal was pending, we addressed a very similar claim in *State v. Summers*, No. WD 76911, 2014 WL 7171572, at *2-4 (Mo. App. Dec. 16, 2014).[2] In that case, Summers pulled a gun on the victim and demanded that the victim give him marijuana. *Id*. at *1. When the victim refused, Summers fired three shots into the floor. *Id*. Summers's companion then shot and killed the victim. *Id*. While the victim lay on the floor, Summers took the victim's marijuana. *Id*.

After he was convicted of first-degree robbery, armed criminal action, and felony murder, Summers argued on appeal that his convictions should be vacated because it was his companion's intervening act of shooting the victim, not his own use of force, that caused the victim to give up the marijuana. *Id*. at *3. We rejected this argument, finding that the phrases "in the course thereof" and "in the course of" in the statutes defining first-degree robbery and "forcibly steals" require consideration of the entire course of the robbery, including events prior to and

---

[2] Wade's counsel in this appeal is the same appellate counsel that represented the defendant in *Summers*.

contemporaneous with the robbery, in determining whether the elements have been satisfied. *Id*. (citing *State v. Neal*, 328 S.W.3d 374, 379-80 (Mo. App. 2010)). Summers's threatening the victim with the handgun, demanding that the victim hand over the marijuana, shooting three times into the floor, and taking the victim's marijuana after his companion shot the victim was sufficient evidence to establish that Summers forcibly stole the marijuana and that he did so while armed with a deadly weapon. *Id*. at *4. Thus, we affirmed Summers's first-degree robbery conviction and the armed criminal action and felony murder convictions based on the robbery. *Id*.

In this case, as in *Summers*, consideration of the entire course of the robbery indicates that Wade used force to take McCarthy's money. Wade shot at Griffith's car before McCarthy fell out of the car. When McCarthy fell on the ground, Wade shot at him twice before taking his money. Wade was still in the act of taking McCarthy's money when he shot at him. This evidence was sufficient to establish that Wade forcibly stole McCarthy's money and did so while using a deadly weapon.

In his reply brief, Wade concedes that *Summers* controls the outcome of not only his sufficiency of the evidence challenge in Point III to the first-degree robbery conviction, but also his sufficiency of the evidence challenges in Point IV to the associated armed criminal action conviction and Point V to the second-degree (felony) murder conviction. We will not further address Points III, IV, and V, as Wade has not asserted independent grounds for reversing those convictions. Wade

8

denies, however, that *Summers* controls the sufficiency of the evidence claim raised in Point I.

In Point I, Wade asserts that the evidence was insufficient to support his conviction for the armed criminal action count predicated on the felony murder conviction. Wade argues that, to convict him of armed criminal action based on the felony murder conviction, the jury had to find that it was his gun that killed McCarthy. We disagree.

Section 571.015.1 provides that "any person who commits any felony under the laws of this state by, with, or through the use, assistance, or aid of a dangerous instrument or deadly weapon is also guilty of the crime of armed criminal action." Under the plain language of the statute, the deadly weapon need not be used during the entire course of the felony; it is sufficient if the deadly weapon is used to assist or aid in the commission of the underlying felony. *See State v. Hill*, 890 S.W.2d 750, 752 (Mo. App. 1995) (defendant who merely brandished gun at some point during drug transactions was properly convicted of armed criminal action predicated on conviction for sale of a controlled substance).

In this case, the armed criminal action conviction was predicated on Wade's felony murder conviction, which was established by evidence that Wade committed the felony of first-degree robbery and McCarthy was killed as a result of the perpetration of that robbery. § 565.021.1(2). The evidence further showed that, during the commission of the felony murder, Wade was armed with a gun and shot at the car and at McCarthy. Contrary to Wade's assertion, the State did not have

9

to show that he personally killed McCarthy; rather, the State was required to show only that Wade committed the felony murder with "the use, assistance, or aid" of a deadly weapon.[3]  Wade's use of the gun to commit the robbery that resulted in McCarthy's being killed was sufficient to establish that he committed the felony murder with the use, assistance, or aid of a deadly weapon.  Therefore, we affirm Wade's convictions for first-degree robbery, armed criminal action predicated on the robbery, second-degree (felony) murder, and armed criminal action predicated on the felony murder.  Points I, III, IV, and V are denied.

In Point II, Wade contends the court erred in not *sua sponte* striking Venireperson 26 on the basis that he "expressed unequivocal biases regarding the burden of proof, the defense's failure to present evidence establishing a defendant's innocence and a defendant's failure to testify."  During voir dire, Venireperson 26 made several comments indicating that he believed the defense should put on evidence to prove Wade's innocence, that he would "feel more comfortable" if the defense put on evidence, and that, even though the court instructs the jury that it cannot hold the defendant's failure to testify against the

[3] Although Wade contends that *State v. Meuir*, 138 S.W.3d 137, 141-42 (Mo. App. 2004) is "very close on point" to this case, we disagree.  The defendant in *Meuir* was convicted of first-degree robbery, via accomplice liability, based upon his accomplice's conduct in stealing a cash drawer at a truck stop and threatening the cashier with a .22 starter's pistol, while the defendant waited in the car with a .30-06 rifle lying between the console and the passenger seat. *Id*. at 139-42.  The defendant was also convicted of armed criminal action for committing the robbery with the .30-06 rifle. *Id*. at 142.  On appeal, the court reversed the armed criminal action conviction, finding that there was no proof that the defendant used the .30-06 rifle to commit the robbery as charged because the defendant was charged as an accomplice, and his accomplice used the .22 starter's pistol to commit the robbery. *Id*.  In contrast, in this case, Wade actually used his gun to assist or aid him in the commission of the felony murder, because he used the gun to commit the robbery that resulted in McCarthy's being killed.

defendant, "deep inside, [he] would be thinking that [Wade] was guilty" if Wade did not testify.

Wade contends that the court should have excluded Venireperson 26 from serving on the jury based on these comments. Wade acknowledges that he did not ask the court to strike Venireperson 26, he did not object to Venireperson 26's serving on the jury, he did not raise any claim regarding Venireperson 26 in his motion for new trial, and that he is asserting this claim for the first time on appeal.

Wade's failure to challenge Venireperson 26 for cause results in a waiver of review. *State v. Baumruk*, 280 S.W.3d 600, 615 (Mo. banc 2009). "'The rule requiring contemporaneous objections to the qualifications of jurors is well founded. It serves to minimize the incentive to sandbag in the hope of acquittal and, if unsuccessful, mount a post-conviction attack on the jury selection process.'" *Id*. (quoting *State v. Hadley*, 815 S.W.2d 422, 423 (Mo. banc 1991)). Thus, "'juror challenges made for the first time after a conviction are highly suspect.'" *Id*. (quoting *Hadley*, 815 S.W.2d at 423).

Nevertheless, Wade asks for plain error relief. Plain error relief is granted "'when the alleged error so substantially affects the rights of the accused that a manifest injustice or miscarriage of justice inexorably results if left uncorrected.'" *Id*. at 616 (citation omitted). Not all prejudicial error is plain error, however. *Id*. Plain errors are only those errors that are "'evident, obvious, and clear.'" *Id.* (citation omitted).

11

The record indicates that defense counsel's questioning appeared to rehabilitate Venireperson 26 as a viable juror. While Venireperson 26 initially expressed a desire to hear from witnesses, including Wade, on Wade's behalf, Venireperson 26 ultimately stated that he would not "hold it against" Wade if he did not testify and that he would find Wade not guilty if the State's evidence did not convince him beyond a reasonable doubt of Wade's guilt. "If the voir dire responses suggest a possibility of bias, but upon further examination that venireperson gives unequivocal assurances of impartiality, the mere possibility of prejudice will not disqualify such rehabilitated juror." *State v. Grondman*, 190 S.W.3d 496, 498 (Mo. App. 2006). Under these circumstances, and in light of the fact that the circuit court was "'under no duty to strike a juror on its own motion,'" *Baumruk*, 280 S.W.3d at 616 (citation omitted), we cannot say that the court's failure to strike Venireperson 26 *sua sponte* constituted evident, obvious, and clear error. Wade is not entitled to plain error relief. *See id*. *See also Ledure v. BNSF Ry. Co.*, 351 S.W.3d 13, 21-22 (Mo. App. 2011). Point II is denied.

## CONCLUSION

The judgment is affirmed.

_____
LISA WHITE HARDWICK, JUDGE

ALL CONCUR.

12