

# IN THE MISSOURI COURT OF APPEALS
# WESTERN DISTRICT

| | | |
|---|---|---|
| STATE OF MISSOURI, | ) | |
| | ) | |
| Respondent, | ) | |
| | ) | |
| vs. | ) | WD78006 |
| | ) | |
| TYRON L. SKINNER, | ) | Opinion filed:  May 3, 2016 |
| | ) | |
| Appellant. | ) | |

### APPEAL FROM THE CIRCUIT COURT OF JACKSON COUNTY, MISSOURI
### THE HONORABLE BRYAN ROUND, JUDGE

Before Division Two:  Victor C. Howard, Presiding Judge,
Thomas H. Newton, Judge and Karen King Mitchell, Judge

Tyron Skinner appeals his conviction following a jury trial of one count of unlawful use of a weapon and one count of armed criminal action, for which he was sentenced to a total of fifteen years in prison.  Skinner argues that the trial court plainly erred in failing to *sua sponte* prevent one of the members of the venire panel from serving as a juror because she allegedly "said that she could not be fair and impartial based upon her personal experiences."  Skinner also contends that the trial court erred in sentencing him as a prior and persistent offender because there was only sufficient evidence to find he was a prior offender.  The convictions are affirmed but the judgment is remanded to the trial court for the sole purpose of entering a *nunc pro tunc* order to correct the written judgment so as to reflect the sentencing imposed by the trial court for Skinner's conviction for unlawful use of a weapon and armed criminal action as a prior offender.

The shooting incident for which Skinner was convicted happened on May 5, 2013. Approximately one week prior to that date, Michael Buie was at a barbecue at his aunt's home when Tenisha Marshall and Skinner, who was nicknamed "Ron Ron," arrived. They were told they were not welcome. Ms. Marshall was cussing and yelling at Mr. Buie, and there was some verbal fighting between Mr. Buie and Skinner, whom Mr. Buie had not seen before. Skinner wanted to fight Mr. Buie, but was restrained, and shortly thereafter, the couple left the barbecue.

Later that week, the Saturday night prior to the shooting, Mr. Buie saw Skinner in the Power and Light District, and Skinner approached him and told him he had been looking for him. Skinner then "squared off" with Mr. Buie, started swinging, and Mr. Buie fought back. Mr. Buie's head was injured during the fight, but he "got the better" of Skinner.

The next morning, Mr. Buie's wife, Ericka Buie, heard shots being fired. She and Mr. Buie were in their home at the time, and just after the shooting stopped she looked out the window and saw Skinner running down the block and saw no one else around. Mr. Buie, whom Ms. Buie had awakened during the shooting, heard gunshots striking vehicles and ran to the door. The shooting lasted about ten to fifteen seconds and had stopped by the time Mr. Buie reached the door. Mr. Buie saw a man running down the street and cutting through the neighbor's yard. Although he could not see the man's face, he recognized that it was Skinner. Mr. Buie returned to the house and found a bullet had hit the house. Both Mr. and Ms. Buie identified Skinner in a photo lineup, as well as at trial, as the person they saw that morning running away just after the shooting.

The Buies' neighbor, Teresa Harris, also heard shots on the morning of the shooting and saw a man in the street with a gun in his hand. Another neighbor, Cesar Sagastume, was helping Ms. Harris with some home repairs that morning and also heard several shots, then went to the

2

front door and opened it, at which time he saw Skinner running down the street trying to put a chrome handgun with a black handle in his pants. Mr. Sagastume saw no one else in the street. Mr. Sagastume identified Skinner in a photo lineup and at trial as the person he saw with a gun running down the street that morning.

The police arrived quickly after the shooting, and witnesses in the area told an officer that someone by the name of "Ron Ron" had shot at their house and had left the area in a gold Chevrolet Impala. The officer found thirteen shell casings nearby and further investigation revealed that numerous bullets had struck a vehicle and the Buies' house. Bullet fragments were found inside the house and in a vehicle.

Skinner was charged as a prior offender with one count of felony unlawful use of a weapon for discharging a firearm at a habitable structure and one count of armed criminal action for the shooting incident. The court found Skinner was a prior offender and he was tried by a jury in April of 2014. Skinner was found guilty on both counts and the court sentenced him to fifteen years in prison. This appeal by Skinner followed.

Skinner requests plain error review in his first point, arguing that the trial court's failure to *sua sponte* prevent one of the members of the venire panel ("Venireperson 9") from serving as a juror because she allegedly "said that she could not be fair and impartial based upon her personal experiences," which resulted in the manifest injustice of his not being convicted by an impartial jury.

The prosecutor asked the jury panel during jury selection whether anyone had been the victim of a violent crime or had a close friend or family member who had been. Venireperson 9 responded that her friend's boyfriend was shot and that she had "a big issue with guns." The prosecutor continued questioning:

3

[Prosecutor]: Okay, so that experience kind of tainted your feelings about firearms, is that fair to say?

[Venireperson 9]: Very much so.

[Prosecutor]: Okay and the fact that there is an allegation of a firearm in this case-

[Venireperson 9]: I would want to know where it was gotten from and how it was shot and everything.

[Prosecutor]: And you understand though that- we were just talking about the elements of the crime and that is not going to be something that the State is required to prove. Do you think that you would still be able to follow the instructions of the judge and decide this case based solely on the evidence that you've heard here in the court today or tomorrow?

[Venireperson 9]: I'm not sure about that

[Prosecutor]: So you can't guarantee as you are sitting there that that wouldn't be on your mind?

[Venireperson 9]: No, I would be thinking about it.

No other questions were asked of Venireperson 9 during jury selection. Venireperson 9 was not struck for cause, nor did either side use a peremptory strike to remove her, and she served on the jury.

Skinner's failure to challenge Venireperson 9 for cause results in a waiver of review. *State v. Wade*, 467 S.W.3d 850, 856 (Mo. App. W.D. 2015). The requirement of contemporaneous objections to the qualification of jurors is a well-founded rule that minimizes "the incentive to sandbag in the hope of acquittal and, if unsuccessful, mount a post-conviction attack on the jury selection process." *Id.* (internal quotations omitted). Post-conviction challenges to jury selection, therefore, are "highly suspect." *Id.*

Nevertheless, Skinner asks this court for plain error relief. "[P]lain errors affecting substantial rights may be considered in the discretion of the court when the court finds that manifest injustice or miscarriage of justice has resulted therefrom." Rule 30.20. Not all

4

prejudicial error is plain error, however; to rise to the level of plain error, an error must be "evident, obvious, and clear." *Wade*, 467 S.W.3d at 856.

We find no basis for plain error relief here. "Missouri courts have consistently held that a trial court is under no duty to remove any venire member *sua sponte*." *State v. Eberius*, 184 S.W.3d 582, 585 (Mo. App. S.D. 2006). Where the trial court is under no duty to strike a venire member on its own motion, there is no evident, obvious, or clear error, and therefore no plain error. *State v. Baumruk*, 280 S.W.3d 600, 616 (Mo. banc 2009). Because there is no plain error, this Court need not proceed to the second step of determining "whether the claimed error resulted in manifest injustice or a miscarriage of justice." *Id.* (quoting *State v. Scurlock*, 998 S.W.2d 578, 586 (Mo. App. W.D. 1999).

Even undertaking the evaluation for a manifest injustice or miscarriage for the sake of argument, we would find none here. Venireperson 9 did not state that she could not be fair and impartial. She arguably equivocated about her ability to place her desire to know more about the gun and its origins and use out of her mind and base her evaluation of the case solely on the evidence presented and instructions given. This equivocation is insufficiently clear as to how it might have affected her decision and whether that effect would give rise to a manifest injustice or miscarriage of justice. Furthermore, her statements on the entire record do not make apparent whether, if she was in fact biased, whom that bias would disfavor: whether her lack of knowledge about the gun's origin and use would cause her to be biased against the defendant for being charged with a gun crime or against the prosecution for not putting on evidence to clarify these facts. Moreover, in response to another line of questioning during voir dire, Venireperson 9 stated that she had a "pretty bad experience with the police a while back" although she also said she would not hold it against any police officers who would potentially testify in the case.

5

This creates additional uncertainty as to whether any potential bias held by Venireperson 9 would benefit the State or Skinner.

Because we find no plain error and no manifest injustice or miscarriage of justice, Skinner's first point is denied.

The rejection of Skinner's first point on appeal does not, however, end our consideration of this case. As previously related, Skinner was charged as a prior offender. The trial court found that Skinner was a prior offender and announced that it was sentencing him accordingly. However, the written judgment and sentence fails to reflect that finding, and instead reflects his sentencing as a prior and persistent offender. The failure to memorialize accurately the decision of the trial court as it was announced in open court was clearly a clerical error. "Rule 29.12 permits a trial court to correct such clerical errors in the judgment that obviously are a result of oversight or omission." *State v. Taylor*, 123 S.W.3d 924, 931 (Mo. App. S.D. 2004) (quoting *State v. Booyer*, 87 S.W.3d 926, 931 (Mo. App. S.D. 2002)). We affirm the conviction and sentence, but remand this case with instructions to the trial court to enter a written judgment reflecting the judgment and sentence as announced by the trial judge in open court.

_____
VICTOR C. HOWARD, JUDGE

All concur.

6