

# Missouri Court of Appeals

## Southern District

### Division One

STATE OF MISSOURI, )
                              )
           Respondent, )
                              )
v. )        No. SD36374
                              )        Filed: September 29, 2020
DOYLE WILLIAM TURNER, )
                              )
           Appellant. )

### APPEAL FROM THE CIRCUIT COURT OF RIPLEY COUNTY

Honorable Michael M. Pritchett, Judge

### **AFFIRMED, AND REMANDED WITH INSTRUCTIONS**

Doyle William Turner ("Turner") appeals his convictions, following a jury trial, of two counts of first-degree burglary, one count of trespass, one count of domestic assault, one count of tampering with a motor vehicle, three counts of armed criminal action, one count of kidnapping, one count of rape, one count of sodomy, one count of unlawful possession of a firearm, and one count of unlawful possession of a weapon. Turner challenges his convictions in three points: (1) that the trial court plainly erred in failing to strike Venireperson No. 27; (2) that the trial court plainly erred in accepting the jury's guilty verdict for Count XIII (sodomy) when he was actually charged with armed criminal action; and (3) that the trial court plainly erred for entering a judgment

of conviction and sentence for burglary in the first degree on Count IV when he was found guilty of the lesser-included offense of trespassing. Finding merit to Turner's third point, we remand for entry of judgment in accord with the trial court's oral pronouncement of sentence in Turner's presence. The trial court's judgment is affirmed in all other respects.

## Facts and Procedural History

We recite the evidence and the reasonable available inferences therefrom in the light most favorable to the verdicts. *State v. Lammers*, 479 S.W.3d 624, 630 (Mo. banc 2016). We recite other information as necessary for context.

Turner and Victim were in a relationship, but had separated. On October 1, 2015, Victim's mother ("Mother") drove Victim home to change clothes before Victim went to her second job. Mother stayed in the living room. Victim went in the bedroom, where Turner grabbed her from behind. Victim screamed, and Turner covered her mouth with his hand, put a knife to her throat, cut her on the hand, and threatened her. Mother heard the scream, and came to check on Victim. Turner told Victim to open the door and tell Mother that she had just cut herself "but [she] will be at work late." Victim opened the door and said the words Turner directed her to repeat; Victim then whispered to Mother to call the police.

Police arrived in response to Mother's call, and found Turner still in Victim's residence. Turner told Victim if he went to jail "they will kill me[.]" Victim did not understand who Turner meant by "they," and thought "oh, my God. Are they going to show up at my door if you get arrested?" Victim therefore did not press charges, and police allowed Turner to leave. Later that day, Victim changed her mind and decided to press charges, but police were unable to immediately locate Turner.

2

Thereafter, Turner threatened to kill Victim's mother and sisters if she did not let him move into her house. Fearing Turner's threat, Victim agreed, and Turner moved into Victim's home. In mid-October 2015, Victim obtained an ex parte order of protection against Turner while he was in Arkansas. Victim then terminated all communication with Turner.

On October 25, 2015, at approximately 1:50 a.m., Turner gained access to Mother's home by throwing two rocks through Mother's bedroom window (one of the rocks struck Mother in the leg). Mother called 911, while Turner crawled toward her in a threatening matter. Then Turner yelled at Mother that he "wasn't going to hurt them," took Mother's car, and left. Mother's car was found abandoned a few weeks later—Turner had evidently attempted to "strip[] everything . . . out" of the car, "tried to snatch the license plates[,]" and tried to repaint it.

On November 15, 2015, Turner broke into Victim's house through her bedroom window while she was sleeping. Victim attempted to escape, but Turner grabbed her and put a gun to her head. Victim sustained a cut to her arm from the broken glass. Turner smashed Victim's phone and forced her to go with him.

Victim was forced to run across a field, climb a fence, and swim across a river. Turner then forced Victim to perform oral sex on him. Afterwards, they continued to walk for a long time, "over barbed wire fences and up more hills[,]" until they arrived at a shed, where Turner raped Victim. Turner pointed the gun at Victim's head and pulled the trigger; however, the safety was on and the gun failed to discharge. Turner then left the shed, locking Victim inside.

Police were able to locate Victim and Turner through an informant. Turner was apprehended at the scene. When interviewed, Turner admitted, in part, that in October, he broke into Victim's home and held a knife to her throat; broke into Mother's home; in November broke into Victim's home by breaking out a bedroom window with a shotgun; forced Victim to go with

3

him to a shed on a piece of property some distance away; secured the shed door with bungee cords; and pointed a loaded gun to Victim's head.

On November 16, 2015, a rape kit was performed on Victim, and Turner's DNA was a match. Turner was charged, by third amended information, as a prior and persistent offender, with the:

•class B felony of burglary in the first degree (Count I), pursuant to section 569.160,[1] for entering Victim's home unlawfully for the purpose of committing the crime of assault on October 1, 2015;

▪class C felony of domestic assault in the second degree (Count II), pursuant to section 565.073, for attempting to cause physical injury to Victim by grabbing and holding a knife to her throat on October 1, 2015 at Victim's home;

▪armed criminal action (Count III), pursuant to section 571.015, for the October 1, 2015 incident at Victim's home by using a dangerous instrument;

•class B felony of burglary in the first degree (Count IV), pursuant to section 569.160, for the October 25, 2015 incident at Mother's home;

▪class C Felony of tampering in the first degree (Count V), pursuant to section 569.080, for the October 25, 2015 incident at Mother's home where Turner took Mother's car without consent;

•class B felony of burglary in the first degree (Count VI), pursuant to section 569.160, for the November 15, 2015 kidnapping of Victim;

▪armed criminal action (Count VII), pursuant to section 571.015, for the November 15, 2015 kidnapping at Victim's home by use, assistance and aid of a deadly weapon;

▪class B felony of kidnapping (Count VIII), pursuant to section 565.110, for the November 15, 2015 incident at Victim's home when Turner removed Victim without her consent and for purpose of terrorizing her;

▪armed criminal action (Count IX), pursuant to section 571.015, for the November 15, 2015 kidnapping of Victim by assistance and aid of a deadly weapon;

•rape in the first degree (Count X), pursuant to section 566.030, for the November 15, 2015 incident involving Victim;

---

[1] All statutory references are to RSMo Cum.Supp. 2013 unless otherwise indicated.

4

▪armed criminal action (Count XI), pursuant to section 571.015, for the November 15, 2015 rape of Victim with use, assistance and aid of a deadly weapon;

•sodomy in the first degree (Count XII), pursuant to section 566.060, for the November 15, 2015 deviate sexual intercourse with Victim by forcible compulsion;

▪armed criminal action (Count XIII), pursuant to section 571.015, for the November 15, 2015 sodimization of Victim with use, assistance and aid of a deadly weapon;

•class C felony of unlawful possession of a firearm (Count XIV), pursuant to section 571.070, for the November 15, 2015 incident involving Victim, by knowingly possessing a shotgun; and

•class C felony of unlawful possession of a weapon (Count XV), pursuant to section 571.020, for the November 15, 2015 incident involving Victim by possessing a 7.5 inch short-barreled shotgun.

A two-day jury trial commenced on May 16, 2019. Turner did not testify.[2] During voir dire, the trial court stated to the venire panel that "[t]he Defendant is presumed to be innocent unless and until during your deliberations upon your verdict you find him guilty. This presumption of innocence places upon the State the burden of proving beyond a reasonable doubt that the Defendant is guilty." The trial court, after further discussing this issue, asked the venire panel, "Is there anyone here today who, if selected as a juror, could not for any reason follow that instruction? If so, would you please raise your hand? I see no hands."

During the defense portion of voir dire, the following exchange took place:

[DEFENSE COUNSEL:] So the State mentioned the burden of proof in this case and it's reasonable doubt. Something that ties along with that is that the Defendant and me [sic] we don't have to put on any evidence. We can sit there and twiddle our thumbs if we want—I'm not saying that's what we are going to do.

But, does that make sense that the burden is completely on the State in this case to prove to you beyond a reasonable doubt guilt?

Does that make sense?

---

[2] During trial, the parties stipulated that Turner was a convicted felon, having been convicted of the theft of a firearm in Wayne County on October 25, 2005.

5

Does anyone disagree with that? That we should have to put on evidence in this case? That would be that the Defendant has to put on evidence and prove the case, not the State? I see no hands.

THE COURT: No. 27.

[DEFENSE COUNSEL:] Yes. No. 27.

[VENIREPERSON] NO. 27: I kind of think that if they put something out there that you should have a chance to refute it back. So if you just sit there and twiddle your thumbs we are only going to get one side of it.

[DEFENSE COUNSEL:] I'm not saying certainly that we are going to sit there and do that. But, just to point that there is a burden and that's on the State in this case.

Does that make sense?

[VENIREPERSON] NO. 27: Got you, yes.

[DEFENSE COUNSEL:] So everyone agrees with that and understands that?

Would anyone here have to hear evidence from us in any way, you know—present some sort of physical evidence or provide some sort of testimony?

Anyone on the right side?

Anyone on the left side?

I see no hands.

(Bolding omitted).

Later in defense counsel's voir dire, defense counsel asked the panel whether "anyone sort of disagree[s] that they can just hear one side and that's enough?" Defense counsel did not see any hands in response. Then, after defense counsel asked the venire members whether it would "bother anyone if they don't hear from Mr. Turner[,]" several (not Venireperson No. 27) began suggesting that if someone is accused of something, that person should speak to the allegation. (Bolding omitted). The trial court then intervened with the following statement:

6

Let me back up for just a minute.

Does everybody remember when I first gave you the instructions about the presumption of innocence? And that I am going to give you instructions to follow the law, which you will apply to the facts?

That's the important question is if you will follow those instructions.

I would like you to keep that in mind as you respond to these questions.

Thank you.

Defense counsel then stated, "So in light of that as the Judge put it you have to follow instructions here. And one of those is the presumption of innocence. So in light of that has that changed anything over here on the left side?" Thereafter, Venireperson No. 27 stated, "He was there. So I mean all the other lawyers can say what they are going to say. But, he was actually there when it happened so if he would give his account of what actually happened I think that's a little more information on what's going on." Defense counsel then asked, "If he doesn't would you be able to be fair and impartial?" Venireperson No. 27 responded, "Well, I think I would be able to be fair and impartial, but I also think that the last thing that I heard is probably what I would be thinking about without a response to that." (Bolding omitted).

Neither the State nor Turner exercised a peremptory strike or moved to strike Venireperson No. 27 for cause, and Venireperson No. 27 ultimately served on the jury (as Juror Number 10).

The jury found Turner guilty of two counts of burglary in the first degree, domestic assault in the third degree, lesser-included offense of trespassing,[3] tampering in the first degree, three counts of armed criminal action, kidnapping, rape in the first degree, sodomy in the first degree, unlawful possession of a firearm, and unlawful possession of a weapon.

---

[3] Count IV originally charged Turner with first-degree burglary. The jury found Turner guilty of the lesser-included offense of trespassing. In its amended judgment, the trial court mistakenly identifies the conviction under Count IV as "Burglary – 1st Degree."

On June 1, 2019, Turner filed a "First Amended Motion for Acquittal or in the Alternative for a New Trial." On August 6, 2019, prior to commencement of the sentencing hearing, the trial court heard argument on Turner's motion and it was overruled. The trial court sentenced Turner to a total of 80 years in prison, as a prior and persistent offender. Judgment was entered on August 6, 2019.

Shortly after sentencing, it was discovered that the verdict form signed by the jury for Count XIII (armed criminal action—relating to Count XII the sodomy charge) contained an error. The verdict form read: "As to Count XIII, we, the jury, find the defendant, Doyle William Turner, *guilty of sodomy* in the first degree as submitted in instruction No. 23." (Emphasis added). The trial court imposed sentence on Count XIII as follows: "Under Count XIII a term of fifty years for the offense of the *unclassified armed criminal action*." (Emphasis added).

A hearing was held on August 14, 2019, to address the error in the Count XIII conviction and sentence. The parties announced an agreement that the prosecutor would dismiss that count, such as to void the associated conviction and sentence. The trial court placed Turner under oath, and Turner confirmed that he understood this, and stated that he had no questions.

On August 16, 2019, an amended judgment was filed showing Count XIII as being dismissed *nolle pros*. This appeal followed.

In three points on appeal, Turner argues the trial court plainly erred by:

1.      failing to sua sponte strike Venireperson No. 27 from the panel because that person "could not unequivocally state that he would presume Mr. Turner was innocent until proven guilty and that he would not draw an adverse inference from Mr. Turner's failure to testify[]";

2.      "in entering a judgment and sentence for armed criminal action as alleged in Count XIII . . . and accepting the jury's 'verdict' on this count," in that the "jury's signed verdict on this count stated the jury was finding Mr. Turner guilty of sodomy in the first degree, which was not the charge for this count; and because the trial court did not have the jury return for further deliberations on this count with a proper verdict

form, Mr. Turner was never actual[ly] found guilty of armed criminal action for Count XIII[]";

3. "in entering written judgment and sentence for the burglary in the first degree on Count IV" because Turner was "acquitted of burglary in the first degree on Count IV, and found guilty of the lesser included offense of trespassing on that charge; and the trial court's oral pronouncement of sentence in Mr. Turner's presence was for trespassing on Count IV."

**Standard of Review**

Generally, this Court does not review unpreserved claims of error. Rule 30.20[4] alters the general rule by giving appellate courts discretion to review plain errors affecting substantial rights [that] may be considered in the discretion of the court . . . when the court finds that manifest injustice or miscarriage of justice has resulted therefrom. Plain error review is discretionary, and this Court will not review a claim for plain error unless the claimed error facially establishes substantial grounds for believing that manifest injustice or miscarriage of justice has resulted. The plain language of Rule 30.20 demonstrates that not every allegation of plain error is entitled to review. The plain error rule is to be used sparingly and may not be used to justify a review of every point that has not been otherwise preserved for appellate review. Unless manifest injustice or a miscarriage of justice is shown, an appellate court should decline to review for plain error under Rule 30.20. Finally, the defendant bears the burden of demonstrating manifest injustice entitling him to plain error review.

*State v. Brandolese*, 601 S.W.3d 519, 525–26 (Mo. banc 2020) (internal quotations and citations omitted).

**Analysis**

*Point I: Venireperson No. 27*

Turner argues that the trial court plainly erred in failing to *sua sponte* strike Venireperson No. 27 in that this venireperson "could not unequivocally state that he would presume Mr. Turner was innocent until proven guilty and that he would not draw an adverse inference from Mr. Turner's failure to testify[.]"

---

[4] All rule references are to Missouri Court Rules (2015).

An appellant's "failure to challenge [a] [v]enireperson . . . for cause results in a waiver of review." *State v. Skinner*, 494 S.W.3d 591, 594 (Mo.App. W.D. 2016).

> The requirement of contemporaneous objections to the qualification of jurors is a well-founded rule that minimizes the incentive to sandbag in the hope of acquittal and, if unsuccessful, mount a post-conviction attack on the jury selection process. Post-conviction challenges to jury selection, therefore, are highly suspect.

*Id.* (internal quotations and citations omitted).

In this instance, Venireperson No. 27 specifically confirmed that he would "be able to be fair and impartial[.]" The mere fact that Venireperson No. 27 also suggested that he (as most people) might have a tendency to remember the last thing he heard is properly understood as an honest comment on memory and priming, and explicitly *not* his inability to be fair and impartial. Turner's opportunity to object to Venireperson No. 27's presence on the jury was before trial (defense counsel elected not to do so), not now for the first time on appeal. *Skinner*, 494 S.W.3d at 594.

Plain error review is discretionary, and we will "not review a claim for plain error unless the claimed error facially establishes substantial grounds for believing that manifest injustice or miscarriage of justice has resulted." *Brandolese*, 601 S.W.3d at 525–26. Turner fails to facially demonstrate such grounds in his instant claim. We accordingly decline to engage in plain error review, and deny his Point I.

### Point II: Count XIII

Turner argues that the trial court plainly erred in entering a judgment and sentence for armed criminal action (Count XIII), and "accepting the jury's 'verdict' on this count," in that "the jury's signed verdict on this count stated the jury was finding Mr. Turner guilty of sodomy in the first degree, which was not the charge for this count[.]" Turner further claims that "because the

trial court did not have the jury return for further deliberations on this count with a proper verdict form, Mr. Turner was never actual [sic] found guilty of armed criminal action for Count XIII."

The record reflects that the State's third amended information charged Turner with armed criminal action in Count XIII. As Turner correctly points out, the jury's signed verdict form for Count XIII was for first-degree sodomy, which was not what Turner was charged with in Count XIII. On August 6, 2019, the trial court orally pronounced that Turner was found guilty of armed criminal action pursuant to Count XIII—the prosecutor and defense counsel both agreed. The trial court sentenced Turner to 50 years in prison for his armed criminal action conviction, pursuant to Count XIII.

On August 14, 2019, the parties appeared before the trial court, and the trial court stated:

> The reason we are here today is that after I sentenced Mr. Turner on August sixth it was discovered that I had sentenced him on a count which duplicated another charge that he had. He was convicted of sodomy in the first degree and I believe there was an armed criminal action associated with that, but in that count, which I believe was XIII, instead of referencing armed criminal action it referenced sodomy in the first degree and, of course, that was not accurate.
>
> So I wanted to get him back on the docket today in order that this could be addressed appropriately. My understanding is that there is an agreement that I would just set aside that conviction under Count XIII. Is that correct?
>
> [PROSECUTOR:] That's my position from the State's perspective, sir.
>
> THE COURT: Do you understand that also, [defense counsel]?
>
> [DEFENSE COUNSEL:] Yes, your Honor.
>
> THE COURT: Now, do you understand that, sir?
>
> [TURNER:] Yes, sir.
>
> THE COURT: So that count will just disappear and whatever sentence you had on that will just be gone?
>
> [TURNER:] Okay.

11

Turner was thereafter placed under oath, and questioned by the trial court:

[THE COURT:]  So did you understand what I just did?

[TURNER:]  Yes, sir.  I understand.

[THE COURT:]  So basically there was a duplicate sentence and that can't happen so what I have done is just eliminated that.  So as far as your convictions are concerned that count is now gone.  Any sentence that I gave you on that count is gone as well.  Do you understand that?

[TURNER:]  Yes, sir.

[THE COURT:]  Any questions about that?

[TURNER:]  No, sir.  None at all.

(Bolding omitted).

As the State points out, Turner "has not suffered plain error, inasmuch as he had a conviction and 50-year sentence vacated and . . . the trial court's judgment cannot be affected by an error to his benefit[.]"  In other words, Turner wholly fails to demonstrate any prejudice attending this claim of error, and his Point II is accordingly denied.[5]

### *Point III:  Count IV*

In his third point, Turner claims the trial court "plainly erred in entering written judgment and sentence for burglary in the first degree on Count IV," in that this violated Turner's right to be present for sentencing, and because Turner "was acquitted of burglary in the first degree on Count IV, and found guilty of the lesser-included offense of trespassing on that charge[,] and because "the trial court's oral pronouncement of sentence in Mr. Turner's presence was for trespassing on Count IV."

---

[5] Although outside Point II's scope, the trial court surely did err in purporting to amend the written judgment eight days after entry.  *See State ex rel. Moore v. Brown*, 270 S.W.3d 447, 449 (Mo.App. S.D. 2008).  Yet we ignore this, pursuant to § 545.030.1(16), because the error worked in Turner's favor.

The State concedes that the trial court "committed a clerical error" in its entry of judgment and sentence for burglary in the first degree on Count IV, for the reasons pointed out in Turner's brief.

"The written sentence and judgment of the trial court should reflect the oral pronouncement of sentence." *State v. Lewis*, 582 S.W.3d 162, 166-67 (Mo.App. W.D. 2019). When a clerical error occurs such that the trial court's written entry of judgment and sentence does not match its oral pronouncement and sentence, the reviewing court may correct the clerical error with a *nunc pro tunc* order. *Id.* at 167. We, therefore, remand for correction of the written judgment and sentence to reflect the trial court's oral pronouncement in Turner's presence. The trial court's judgment is affirmed in all other respects.

WILLIAM W. FRANCIS, JR., J. – OPINION AUTHOR

NANCY STEFFEN RAHMEYER, P.J. – CONCURS

DANIEL E. SCOTT, J. - CONCURS