

# IN THE MISSOURI COURT OF APPEALS
## WESTERN DISTRICT

| | | |
|---|---|---|
| STATE OF MISSOURI, | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | WD83180 |
| | ) | |
| CHRISTOPHER EUGENE PIKE, | ) | FILED: January 12, 2021 |
| Appellant. | ) | |

**Appeal from the Circuit Court of Platte County
The Honorable James W. Van Amburg, Judge**

**Before Division Three: Edward R. Ardini, Jr., P.J.,
and Alok Ahuja and Gary D. Witt, JJ.**

Following a jury trial, Christopher Pike was convicted in the Circuit Court of Platte County of domestic assault in the second degree. Pike appeals. He argues that the circuit court plainly erred in failing to strike two venire members for cause on the court's own motion, because the venire members did not unequivocally indicate that they could be fair and impartial. We reject Pike's jury-selection argument and affirm his conviction. We vacate the judgment and remand to the circuit court, however, so that the court can enter a judgment *nunc pro tunc* accurately reflecting the offense of which Pike was convicted.

## Factual Background

Pike was dating his female Victim in April 2018. On April 11, 2018, the Victim went to Pike's home. After some drinking, a verbal argument ensued. The argument escalated and became physical when the Victim stated that she wanted to go to bed at approximately 10:00 p.m. Pike threatened the Victim's life. He punched her in the cheek, then choked her and hit her multiple times in the head as

well as in the stomach.  The Victim eventually made her way to the kitchen, where she grabbed a knife and told Pike, "if you want me dead that bad, you can just kill me."  Pike grabbed the knife from the Victim, and the assault ended.

Later that night, Pike restrained the Victim on the bed after she had taken her clothes off.  Pike punched the Victim multiple times in the vaginal area, and whipped her with a belt across the upper thighs.  Pike inserted his fist and a baseball bat inside the Victim's vagina; at the Victim's request, Pike placed a condom on the baseball bat.  The Victim testified that she believed it was in her best interest not to resist the sexual acts Pike was performing, but she did not consent.  Pike let the Victim out of her restraints to perform oral sex on him, which she did.  Pike then fell asleep, and the Victim fled the house.

The Victim suffered extensive injuries as a result of the incident, and was still in considerable pain at the time of trial in July 2019.  The Victim suffered substantial bruising all over her body.  She had lacerations on her lips, neck, arms, thighs, and labia, as well as on her liver, which caused internal bleeding.  Her left eardrum was damaged, and her cervix was injured and bleeding.  The forensic nurse who treated the Victim testified that she does not frequently see the type of injuries the Victim suffered, because "most women don't survive those types of injuries."  A physician testified that he would typically associate the type of laceration which the Victim suffered on her liver with a significant abdominal trauma like that occurring in a high-speed motor vehicle accident.

Pike messaged the Victim following the abuse, begging her not to go to the police.  Pike offered the Victim "a couple thousand dollars" if she would not report him.

Police obtained a search warrant for Pike's home.  They observed multiple broken objects in the master bedroom.  Police recovered a baseball bat with a

2

condom over the barrel from the corner of the bedroom, and photographed black straps attached to three corners of the bed.

Pike was charged in an amended information with first-degree sodomy in violation of § 566.060[1] (Count I), and with first-degree domestic assault in violation of § 565.072 (Count II).

During jury selection at Pike's trial, multiple members of the jury venire indicated that they had been victims of sexual abuse, or had close friends or family members who had been victimized. Near the end of the State's voir dire examination, Venireperson 28 stated that his niece had been sexually assaulted and murdered a few years previously. Venireperson 28 stated that law enforcement had responded to his niece's case, that the case had been resolved, and that he was satisfied with how the case had been handled. When he was asked if there was "[a]nything about that case and your connection to it that would make you unable to be fair and impartial in this case," Venireperson 28 responded, "[p]ossibly." No further questions were asked of Venireperson 28, and he made no further statements during voir dire.

Defense counsel asked the venire members additional questions concerning their experience with sexual assault. During that questioning, defense counsel had the following exchange with Venireperson 40.

> [Venireperson] 40: And I have a cousin that was sexually assaulted growing up. She did report it years later and he did serve time but he has since been released.
>
> [Defense Counsel]: Would that affect your ability to serve on this jury, do you think?
>
> [Venireperson] 40: Possibly.
>
> [Defense Counsel]: Okay. Can we do a little beyond "possibly"?

---

[1] Statutory citations refer to the 2016 edition of the Revised Statutes of Missouri, updated by the 2017 Supplement.

[Venireperson] 40: I think I feel the same way [as another venire member] that I would like to think I could be impartial but if it did make me think of the stories that I heard or memories, then it could make me unfair.

[Defense Counsel]: And nobody wants any of you to have memories dredged that are unpleasant, so if you can't do it, you need to let us know.

[Venireperson] 40: I do think that it would be hard.

[Defense Counsel]: Okay. Thanks.

No further questions were asked of Venireperson 40.

As the parties and the court discussed striking venire members for cause, the State requested that Venireperson 28 be stricken. Although using the incorrect gender pronoun, the prosecutor accurately described Venireperson 28 as the individual who "claimed [his] niece had been raped." Another prosecutor interjected – mistakenly – that the relevant venire member was Venireperson 29. Defense counsel stated that she had "[n]o objection," and Venireperson 29 was stricken for cause (based on the circumstances to which Venireperson _28_ had testified during voir dire).

Later, the court raised the prospect of striking Venireperson 29 based on hardship. The court accurately described Venireperson 29 as a psychotherapist who was concerned that jury service would disrupt her treatment of her patients. Counsel for the State responded that "I thought we already struck her for cause," and the court then repeated that "29 is struck already." During this exchange, the court also stated – unprompted and inaccurately – that "40 is struck. 40 is struck already." Neither the prosecution nor the defense corrected the court's misstatement that Venireperson 40 had been stricken.

At the close of the discussion of strikes for cause and for hardship, the court listed on the record those venire members who remained, including Venirepersons

4

28 and 40. Neither party raised any objection. Neither side used peremptory strikes against Venirepersons 28 or 40, and both served on Pike's jury.

The jury deadlocked on Count I, first-degree sodomy. On Count II, the jury convicted Pike of the lesser-included offense of domestic assault in the second degree in violation of § 565.073.[2] The circuit court accepted the jury's verdict on Count II, and declared a mistrial on Count I.

Pike subsequently entered into a plea agreement with the State to resolve the remaining charge. As part of the plea agreement, the State filed an amended information reducing the offense charged in Count I from first-degree sodomy to assault in the second degree in violation of § 565.052. The amended information added an additional charge of second-degree assault arising out of the April 12, 2018 incident as Count III, and a charge of damage to jail property in violation of § 221.353 as Count IV. Pike entered a plea of guilty to Counts I, III, and IV of the amended information on February 28, 2020.

The circuit court sentenced Pike to seven-year terms of imprisonment on Counts I, II and III, and a four-year term on Count IV. The sentences on Counts III and IV were ordered to run consecutively to each other, and consecutively to the sentence on Count II, for a total term of imprisonment of eighteen years.

Pike appeals. On appeal, he challenges only his conviction on Count II (the count of which he was convicted by the jury).

## Standard of Review

Pike did not move to strike Venirepersons 28 and 40 before the jury was seated, and he did not challenge their service on the jury in his new-trial motion.

---

[2]    Domestic violence in the first degree, with which Pike was charged, required that the defendant knowingly caused or attempted to cause the victim "serious physical injury," while second-degree domestic assault required that the defendant "[k]nowingly causes physical injury to such domestic victim by any means." *See* §§ 565.072.1, 565.073.1(1).

5

Pike concedes that he failed to preserve his challenges to the qualifications of Venirepersons 28 and 40 for appellate review, and that he is entitled only to plain-error review.

When a claim of error is unpreserved, Rule 30.20 gives appellate courts discretion to review "plain errors affecting substantial rights . . . when the court finds that manifest injustice or [a] miscarriage of justice has resulted therefrom." Rule 30.20. Review for plain error involves a two-step process. *State v. Baumruk*, 280 S.W.3d 600, 607 (Mo. 2009). The first step requires a determination of whether there is a claim of "evident, obvious, and clear" error which "facially establishes substantial grounds for believing that manifest injustice or miscarriage of justice has resulted." *Id.* (citations and internal quotation marks omitted). "If plain error is found, the court must then proceed to the second step and determine whether the claimed error resulted in manifest injustice or a miscarriage of justice." *Id.* at 607-08 (citation and internal quotation marks omitted). "[T]he defendant bears the burden of demonstrating manifest injustice entitling him" to review. *State v. Brandolese*, 601 S.W.3d 519, 526 (Mo. 2020) (citation and internal quotation marks omitted).

"The plain error rule is to be used sparingly and may not be used to justify a review of every point that has not been otherwise preserved for appellate review." *State v. Jones*, 427 S.W.3d 191, 195 (Mo. 2014). Moreover, "[n]ot all prejudicial error – that is, reversible error – can be deemed plain error. Rather, a defendant's Rule 30.20 burden is much greater – not merely to show prejudice, but manifest injustice or a miscarriage of justice – which in this context means outcome-determinative error." *State v. Jones*, 530 S.W.3d 525, 529 (Mo. App. E.D. 2017) (citations and internal quotation marks omitted).

6

## I.

A criminal defendant is entitled to a fair and impartial jury. U.S. Const. amend. VI, XIV; Mo. Const. art. 1, §§ 18(a), 22(a). To protect this constitutional right, "a venireperson is qualified to serve as a juror only if said venireperson is able to enter upon that service with an open mind, free from bias and prejudice." *Jones*, 530 S.W.3d at 532 (citation and internal quotation marks omitted). "Where a venireperson's answer suggests a possibility of bias, that person is not qualified to serve as a juror unless, upon further questioning, he or she is rehabilitated by giving unequivocal assurances of impartiality." *James v. State*, 222 S.W.3d 302, 306 (Mo. App. W.D. 2007).

Here, both Venirepersons 28 and 40 stated that the experiences of their family members with sexual assault could "possibly" impact their ability to be fair and impartial, and neither venire member was questioned further or rehabilitated. Had defense counsel moved to strike Venirepersons 28 and 40 for cause, it may well have been reversible error for the circuit court to allow them to serve on the jury.

Defense counsel did not move to strike either venire member, however, and Pike thereby waived appellate review. *State v. Baumruk*, 280 S.W.3d 600, 615 (Mo. 2009). As the Missouri Supreme Court has explained:

> The rule requiring contemporaneous objections to the qualifications of jurors is well founded. It serves to minimize the incentive to sandbag in the hope of acquittal and, if unsuccessful, mount a post-conviction attack on the jury selection process. For that reason, juror challenges made for the first time after a conviction are highly suspect.

*State v. Hadley*, 815 S.W.2d 422, 423 (Mo. 1991) (citation omitted).

Despite Pike's failure to preserve the juror-qualification issue, "this Court may consider whether plain error occurred." *Baumruk*, 280 S.W.3d at 616 (citation omitted). While *Baumruk* holds that a circuit court's failure to strike a juror for cause is subject to plain-error review, the Supreme Court's discussion indicates that

it will be a rare case in which plain error is found based on a trial court's failure to strike a juror *sua sponte*. The Court explained:

> "[A] trial court is under no duty to strike a juror on its own motion." *Hadley*, 815 S.W.2d at 424. In *State v. Overby*, this Court emphasized that "[t]he absence of any showing by the transcript that the juror was challenged precludes [the Court's] finding that the trial court erred in the respect charged." 432 S.W.2d 277, 279 (Mo.1968). "The trial court was under no duty to strike the juror on its own motion." *Id.* Furthermore, "[t]rial strategy is a significant consideration and such assertions of plain error are normally denied without comment."
>
> Here, defense counsel failed to strike peremptorily Mr. Matlock or seek to strike him for cause. As such, this challenge is highly suspect. *See Hadley*, 815 S.W.2d at 423. The trial court in Mr. Baumruk's proceedings was under no duty to strike Mr. Matlock on its own motion, and, therefore, there was no evident, obvious or clear error.

*Baumruk*, 280 S.W.3d at 616 (other citations omitted).

This Court has repeatedly rejected claims that a circuit court committed plain error by failing to strike a venire member for cause. In *State v. Ebeirus*, 184 S.W.3d 582 (Mo. App. S.D. 2006), the Court noted that the defendant had "cite[d] no case where a trial court has been found to have committed reversible error, under plain error review, for failing to remove a member of the venire *sua sponte*." *Id.* at 585. The Southern District reasoned that "[t]his absence [of reversals for plain error] is the natural result of the policy requiring a contemporaneous objection to the qualifications of jurors." *Id.*; *see also State v. Skinner*, 494 S.W.3d 591, 594 (Mo. App. W.D. 2016) ("Where the trial court is under no duty to strike a venire member on its own motion, there is no evident, obvious, or clear error, and therefore no plain error. Because there is no plain error, this Court need not proceed to the second step of determining 'whether the claimed error resulted in manifest injustice or a miscarriage of justice.'" (citing and quoting *Baumruk*, 280 S.W.3d at 616)); *State v. Jones*, 530 S.W.3d 525, 532 (Mo. App. E.D. 2017) (quoting and following *Skinner*); *State v. Marr*, 499 S.W.3d 367, 376 (Mo. App. W.D. 2016).

Given that the circuit court was under no obligation to strike Venirepersons 28 and 40 on its own motion, Pike has failed to establish that the court committed evident, obvious, and clear error by failing to remove them from the jury pool. In addition, we note that in this case the court *intended* to strike Venireperson 28 for cause, but was misled by the prosecution as to the number of the venire member to be stricken. Pike's counsel affirmatively stated that she had "no objection" to the court striking Venireperson 29, based on Venireperson 28's relationship to a victim of sexual assault. In these circumstances, we will not convict the circuit court of plain error where counsel for both parties participated or acquiesced in the court's striking of the wrong venire member.

Given that there was no evident, obvious, or clear error in this case, it is unnecessary to consider whether a manifest injustice or miscarriage of justice occurred. Even if we considered the issue, we would find no manifest injustice mandating plain-error relief. Neither Venireperson 28 nor Venireperson 40 testified that they would be unable to act fairly and impartially in Pike's case. Venireperson 28 stated only that the sexual assault and murder of his niece could "possibly" affect his ability to be fair and impartial. Similarly, Venireperson 40 stated that his cousin's victimization could "possibly" affect his ability to serve on Pike's jury, but that he "would like to think [he] could be impartial," although he acknowledged "that it would be hard." These sort of equivocal responses are insufficient to establish manifest injustice – namely, that the seating of Venirepersons 28 and 40 constituted "outcome-determinative error." *Jones*, 530 S.W.3d at 529 (citation and internal quotation marks omitted); *see Skinner*, 494 S.W.3d at 594 (no manifest injustice where venire member "did not state that she could not be fair and impartial," but merely "equivocated" as to whether she would want to hear evidence on an extraneous issue; "[t]his equivocation is insufficiently

9

clear as to how it might have affected her decision and whether that effect would give rise to a manifest injustice or miscarriage of justice").

The lack of manifest injustice is confirmed by the relatively favorable outcome Pike achieved at trial. The State presented extensive and detailed testimony concerning Pike's brutal actions, and the serious injuries he inflicted on the Victim. This testimony was corroborated by graphic photographs of the Victim's injuries, and by the physical evidence police recovered or observed in Pike's bedroom (including a baseball bat with a condom on it, and straps attached to the corners of his bed). The State also presented the jury with electronic messages in which Pike begged the Victim not to go to the police, and offered her thousands of dollars to remain silent. Despite all of this evidence, the jury deadlocked on the first-degree sodomy count, requiring the court to declare a mistrial on that count. On the domestic assault count, the jury convicted Pike of a lesser second-degree offense, rather than the first-degree offense charged by the State. In these circumstances, Pike cannot establish that he suffered a manifest injustice by the seating of Venirepersons 28 and 40 on his jury.

## II.

What we have said above disposes of the claims of error Pike raises. In its brief, however, the State points out that the circuit court's amended judgment incorrectly states that Pike was convicted on Count II of assault in the second degree in violation of § 565.052, even though the court orally pronounced sentence for domestic assault in the second degree in violation of § 565.073. "The failure to memorialize accurately the decision of the trial court as it was announced in open court was clearly a clerical error. Rule 29.12 permits a trial court to correct such clerical errors in the judgment that obviously are a result of oversight or omission." *Skinner*, 494 S.W.3d at 595 (citation and internal quotation marks omitted); *see also State v. Sanders*, 481 S.W.3d 907, 912 (Mo. App. E.D. 2016) (citing *Johnson v. State*,

10

446 S.W.3d 274, 276-77) (Mo. App. E.D. 2014)); Rule 29.12(c) ("Clerical mistakes in judgments . . . may be corrected by the court at any time after such notice, if any, as the court orders."). Because the circuit court's judgment inaccurately reports the offense of which Pike was convicted on Count II, we vacate the judgment, and remand to the circuit court for entry of a *nunc pro tunc* judgment correctly identifying the offense of which Pike was convicted, and for which he was sentenced, on Count II. Because second-degree assault and second-degree domestic assault are both class D felonies, re-sentencing on Count II is not required.

**Conclusion**

We affirm Pike's convictions, but vacate the judgment and remand to the circuit court to enter a judgment *nunc pro tunc* accurately memorializing Pike's conviction on Count II.

_____
Alok Ahuja, Judge

All concur.

11